ROBERT LOEWENSTEIN, PLAINTIFF, V. AMATEUR SOFTBALL ASSOCIATION OF AMERICA, DEFENDANT.

418 N.W.2d 231

Filed January 22, 1988. No. 87-471.

Thom K. Cope of Bailey, Polsky, Cada, Todd & Cope, for plaintiff.

Randall L. Goyette of Baylor, Evnen, Curtiss, Grimit & Witt, and Edward T. Colbert and Joseph D. Lewis of Kline, Rommel & Colbert, for defendant.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

WHITE, J.

The U.S. District Court for the District of Nebraska has requested this court to answer questions of state law, the answers to which "may be determinative of the cause then pending in the certifying court." This court accepted the request for certification. Neb. Rev. Stat. § 24-219 (Reissue 1985).

Involved are the provisions of Neb. Rev. Stat. § 20-127 (Reissue 1983). The pertinent part of the statute provides:

> (1) The blind, the visually handicapped, the hearing impaired, and the otherwise physically disabled shall have the same right as the able bodied to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places.

> (2) The blind, the visually handicapped, the hearing impaired, and the otherwise physically disabled shall be entitled to full and equal accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motor buses, street cars, boats or any other public conveyances or modes of transportation, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law and applicable alike to all persons.

The questions addressed to us are:

> 1. Does a "public accommodation, amusement or resort, and other places to which the general public is invited" within the meaning of Neb. Rev. Stat. §20-127 (Reissue of 1983), include the playing field of a privately or city-owned playground that is leased to a local

association of ASA during the time an ASA-sanctioned softball game is in progress?

2. Are the words "the same right as the able bodied to the full and free use" limited by considerations of safety, and, if so, what is the limitation standard?

A review of the facts is helpful. The Amateur Softball Association of America (ASA) is a nonprofit corporation which promotes the sport. The ASA organizes a national softball program with approximately 200,000 teams, numerous players, and 65,000 umpires. The ASA is affiliated with amateur sports organizations and is the exclusive national governing body of the sport of softball.

Robert Loewenstein is a paraplegic and confined to a wheelchair. For the past 4 years Loewenstein has been actively engaged as a coach of a women's softball team in Grand Island, Nebraska. In his coaching duties Loewenstein has frequently acted (in addition to his other duties) as an on-the-field base runner coach. In softball, as well as in baseball, areas usually marked by a chalkline are located near the first base and third base of a softball playing field. It is in those areas that a base runner coach generally places himself.

In 1986 the ASA amended rule 3, § 9, of the ASA Official Guide and Rule Book. Section 9 states: "NO EQUIPMENT SHALL BE LEFT LYING ON THE FIELD, EITHER IN FAIR OR FOUL TERRITORY. . . . All non-player equipment — including wheelchairs, crutches and other similar items — shall be confined to out-of-play areas." The Grand Island Softball Association (GISBA) promulgated the rule at the same time. GISBA schedules its games on playing areas leased from either the city of Grand Island or a private owner.

Section 9 effectively prohibits Loewenstein from entry on the playing surface during association games while the contests are in progress.

It is important that this court clearly state what it is called on to do. As a matter of comity, this court has agreed to interpret a statute. It is not called on to make a factual judgment or to apply any factual judgment to a legal standard.

We will consider the questions in the order presented. The plain meaning of the phrase "and other places to which the

general public is invited" within § 20-127(2) is dispositive of the issue raised by the first certified question. By the inclusion of this catchall phrase, the Legislature evidenced its intent that this statute should apply whenever the general public is invited to a given place at a given time. This is the case whether the locale of invitation is private or public in nature. The question before this court, then, is not whether the softball fields here in question possess some immutable characteristic which places them within the scope of the statute but, rather, whether GISBA invited the general public to play softball on these fields "during the time an ASA-sanctioned softball game is in progress." The answer to this question is found in the testimony of Ralph Ribble, who is the president of the board of directors of GISBA:

> [Attorney] There's no restriction on any member of the public becoming a member of the team, though, is there?
>
> [Ribble] Not if they agree to abide by the ASA rules.
>
> [Attorney] Absolutely, and so any member of the public could get a team together, as they do in Grand Island, apply for ASA membership and become a team, right?
>
> [Ribble] As long as they follow the guidelines.
>
> [Attorney] So your ASA sanction is really open to all members of the public, is it not?
>
> [Ribble] Yes.

Clearly, the softball fields are "places to which the general public is invited" under § 20-127(2). The fact that the invitation is restricted to ASA and team members is of no consequence since, in the first instance, all members of the public may become qualified to play. It is not necessary to decide whether the softball fields are per se places of "public accommodation, amusement or resort." It is enough to say that during the time an ASA-sanctioned softball game is in progress, the fields constitute places protected by the statute.

The second question asks whether there is an implied defense or exception to the rule in § 20-127 when the handicapped are excluded from public accommodations for reasons of safety. The defendant would have this court impose limiting language upon the statute that would allow those in control of public accommodations to restrict a physically disabled person from

access whenever they feel that such access would create an unreasonable safety risk. The defendant argues that "[p]laintiff is asking this Court to extend Neb. Rev. Stat. § 20-127 far beyond the laudable and remedial intentions of the legislature." Brief for Defendant at 7. We must recognize, however, that a violation of § 20-127 constitutes a Class III misdemeanor punishable by both fines and imprisonment. See Neb. Rev. Stat. § 20-129 (Reissue 1983). The liability imposed is therefore penal in nature and not limited by the damage caused to the handicapped person who is unjustly excluded. In other words, the Legislature's intent was more than just remedial.

The position of the defendant seems to be that § 20-127 should be open to construction as a matter of course and that we should not only construe it, but judicially rewrite it. The rules of statutory construction applicable here were well stated in *Bachus v. Swanson*, 179 Neb. 1, 4, 136 N.W.2d 189, 192 (1965):

> A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language.

Furthermore, since § 20-127 is a penal statute, it must be strictly construed. We will not read in exceptions omitted by the Legislature or extend the language used by implication. *Bachus, supra.* The court will not speculate as to why the Legislature did not include a safety exception. We must assume that the Legislature intended to do what it did. *Id.*

As we have said, § 20-127 is unambiguous. Consideration of legislative intent is therefore unnecessary. However, evidence of the fact that this section is devoid of safety considerations is found in the floor debate which took place on a 1980 amendment to § 20-127. This amendment added subsection (4) to § 20-127, which provides: "Every totally or partially blind person shall have the right to make use of a white cane in any of the places listed in subsection (2) of this section." In discussing

the amendment, Senator Nichol addressed the Legislature as follows:

> Mr. President, members of the Legislature, this was brought to my attention over the weekend by Dr. Nyman who is the Director of the visually impaired for the State of Nebraska and he states that this is necessary because people using white canes would not be allowed in certain public places although their seeing eye dogs would be allowed, for example, skating rinks, other public places where many visually impaired people use their white canes instead of a seeing eye dog.

Floor Debate, L.B. 932, Urban Affairs Committee, 86th Leg., 2d Sess. 7588 (Mar. 3, 1980). The Legislature had before it an example of a potentially dangerous situation, a blind person with a cane in a skating rink, and yet, without regard to safety, chose to extend the protection provided by this section by passing the amendment. In fact, the amendment was passed by a unanimous vote. The answer to the second question is therefore no.

The only foreseeable limitation on § 20-127 would be that in a given situation the statute might cause a regulatory taking without just compensation contrary to the 5th and 14th amendments to the U.S. Constitution. This would be the case only if the statute as applied does not substantially advance legitimate state interests, see *Nectow v. Cambridge*, 277 U.S. 183, 48 S. Ct. 447, 72 L. Ed. 842 (1928), or denies an owner economically viable use of his land, see *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). See, also, *Agins v. Tiburon*, 447 U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980): Whether a particular restriction on the use of property will be rendered invalid depends largely upon the particular circumstances. *Id*. Such an issue, however, is not before this court.

The cause is remanded to the U.S. District Court for the District of Nebraska.

JUDGMENT ENTERED.