Lawrence O. **ANDERSON**, Plaintiff,

v.

**LITTLE LEAGUE BASEBALL, INC.**, a not-for-profit corporation, Dr. Creighton J. Hale, an individual, Defendants.

**No. CIV 92–1282–PHX–EHC.**

United States District Court, D. Arizona.

July 8, 1992.

Robert B. Hoffman, Martha E. Gibbs, Stephanie J. Quincy, Snell & Wilmer, Phoenix, Ariz., for plaintiff.

Robert J. Bruno, Teilborg Sanders & Parks, Phoenix, Ariz., for defendants.

## ORDER

EARL H. CARROLL, District Judge.

*Background*

On July 24, 1991, Defendants Little League Baseball, Inc. and its President and Chief Executive Officer Dr. Creighton J. Hale adopted the following policy regarding base coaching:

... (coach in wheel chair) may coach from the dugout, but cannot be in the coachers box. Little League must consider the safety of the youth playing the game, and they should not have the added concern of avoiding a collision with a wheel chair during their participation in the game.

Plaintiff, who is confined to a wheelchair due to a spinal cord injury, has coached Little League Baseball for the past three years as an on-field base coach. Complaint at 4. Plaintiff alleges that defendants adopted this policy to prevent him from participating on the baseball field during the 1991 season-end tournament. *Id.* at 2.

According to plaintiff, the local Little League refused to enforce defendants' policy. *Id.* (*citing* Memorandum to Carl Magee from M.S. Kayes dated July 25, 1991). Plaintiff's team was eliminated early from the 1991 tournament. Defendants did not actively pursue the policy at that time. Complaint at 2.

Thereafter, the State District Administrators of Little League voted to oppose the policy and seek its reversal, and District Administrator Mike Kayes urged defendants to reconsider the policy. *Id.* (*citing* Memorandum to Creighton Hale from Mike Kayes dated November 12, 1991). Other persons associated with Little League also encouraged defendants to reconsider the policy. Complaint at 2 (*citing* Letter to Creighton Hale from Dennis Miller dated January 13, 1992; Letter to Creighton Hale from David Capozzi dated March 31, 1992). On June 30, 1992, defendants reaffirmed the policy. Complaint at 2 (*citing* Letter to William Tibbits from John Lally dated July 1, 1992).

Throughout the course of the 1991–1992 regular season, the local Little League refused to enforce the policy banning wheelchairs from the coachers box and allowed plaintiff to continue serving as an on-field base coach. Complaint at 2. Recently, plaintiff complains, defendants have attempted to require local Little League officials to exclude plaintiff from the field by threatening revocation of charters and tournament privileges. *Id.* (*citing* Memorandum to All Presidents–District # 6 Arizona from Creighton Hale dated July 3, 1992). Defendants' recent actions have led plaintiff to believe that defendants will not allow him to coach on the field during the 1992 season-end tournament which begins

on July 8, 1992. Complaint at 2. Plaintiff was selected to coach the All–Star team in the tournament. Moreover, plaintiff is concerned that defendants will attempt to prevent him from coaching on the field next year. *Id.* at 2–3.

In response, plaintiff initiated this action for declaratory and injunctive relief. At the hearing on plaintiff's application for a temporary restraining order, plaintiff asked this Court to enjoin defendants from preventing plaintiff from participating fully, coaching on the field, or otherwise being involved to the full extent of his responsibilities as coach. In addition, plaintiff requested that this Court enjoin defendants from intimidating or threatening players, parents of players, coaches, officials, umpires, or other persons involved in Little League Baseball and from attempting to induce them to boycott games because of plaintiff's participation.

*Discussion*

The "Americans with Disabilities Act" was enacted on July 26, 1990. In passing the Act, Congress recognized that one or more physical or mental disabilities affect more than 43,000,000 Americans whom society has tended to isolate and segregate because of their disabilities. *See* 42 U.S.C. § 12101(a)(1) and (2). Such discrimination exists in the areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services. 42 U.S.C. § 12101(a)(3). Disabled individuals experience not only outright intentional exclusion, but also the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modification to existing facilities and practices, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. § 12101(a)(5).

The Act's Subchapter III—Public Accommodations and Services Operated by Private Entities, which became effective on January 26, 1992, provides as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Many disabled people lead isolated lives and do not frequent places of public accommodation. H.R. No. 101–485(II), 101st Cong.2d Sess., *reprinted in* 1990 U.S.Code Cong. & Admin.News 4, 267, 316. "The extent of non-participation of individuals with disabilities in social and recreational activities is alarming." *Id.* (*quoting* National Council on Disability, *Implications for Federal Policy of the 1986 Harris Survey of Americans with Disabilities*, p. 37). The United States Attorney General has stated that we must bring Americans with disabilities into the mainstream of society "in other words, full participation in and access to all aspects of society." H.R. No. 101–485(II) at 35, U.S.Code Cong. & Admin.News 1978, p. 317.

The term "public accommodation" includes any gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation which affects interstate commerce. 42 U.S.C. § 12181(7)(L). Plaintiff alleges that "public accommodation" includes Little League Baseball and its games. Application for Temporary Restraining Order at 8.[1] Further, plaintiff alleges that defendants are subject to the provisions of the Americans with Disabilities Act because they "own, lease (or lease to), or operate a place of public accommodation" within the meaning of the Act. *Id.* at 11. The Court notes that defendants have raised no challenge to the Court's jurisdiction in this matter.

---

**1.** *See National Organization for Women, Essex County Chapter v. Little League Baseball, Inc.,* 127 N.J.Super. 522, 318 A.2d 33, 37–38 (N.J.Super.Ct.), *aff'd,* 67 N.J. 320, 338 A.2d 198 (1974); *see also Loewenstein v. Amateur Softball Association of American,* 227 Neb. 454, 418 N.W.2d 231, 233 (1988).

Despite its prohibition against discrimination in public accommodations, Subchapter III provides:

> Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.

42 U.S.C. § 12182(b)(3). In determining whether an individual, such as plaintiff, poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: (1) the nature, duration, and severity of the risk; (2) the probability that the potential injury will actually occur; and (3) whether reasonable modifications of policies, practices, or procedures will mitigate the risk. 28 C.F.R. § 36.208(c).

The Act's definition of "direct threat" codifies the standard first articulated by the United States Supreme Court in *School Board of Nassau County, Fla. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), in which the Court held that a person suffering from the contagious disease of tuberculosis can be a handicapped person with the meaning of Section 504 of the Rehabilitation Act of 1973. *See Arline*, 480 U.S. at 287, 107 S.Ct. at 1130–1131. The Court recognized that there is a need to balance the interests of people with disabilities against legitimate concerns for public safety. 56 Fed.Reg. 35560 (1991). "The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability; it must be based on an individual assessment that conforms to the requirements of [28 C.F.R. § 36.208(c)]." *Id.* An individualized inquiry is essential if the law

is to achieve its goal of protecting disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear. *Id.*

There is no indication in the pleadings, affidavits, or oral arguments presented by the parties that defendants conducted an individualized assessment and determined that plaintiff poses a direct threat to the health and safety of others. In fact, there is no indication that defendants undertook any type of inquiry to ascertain "the nature, duration, and severity of the risk" posed by plaintiff; "the probability that the potential injury will actually occur;" or "whether reasonable modifications of policies, practices, or procedures will mitigate the risk" allegedly posed by plaintiff. *See* 28 C.F.R. § 36.208(c). Defendants' policy amounts to a absolute ban on coaches in wheelchairs in the coachers box, regardless of the coach's disability or the field or game conditions involved. Regrettably, such a policy—implemented without public discourse—falls markedly short of the requirements enunciated in the Americans with Disabilities Act and its implementing regulations.

The Court gives great weight to the fact that plaintiff has served as a Little League coach at either first base or third base for three years without incident. Moreover, plaintiff's significant contributions of time, energy, enthusiasm, and personal example benefit the numerous children who participate in Little League activities as well as the community at large. Plaintiff's work with young people teaches them the importance of focusing on the strengths of others and helping them rise to overcome their personal challenges.

The Court has no doubt that both plaintiff and the children with whom he works will suffer irreparable harm if defendants are permitted to arguably discriminate against plaintiff based upon his disability. Such discrimination is clearly contrary to public policy and the interests of society as a whole. In particular, such discrimination is contrary to the interests of plaintiff and everyone who is interested or participates

in Little League activities, including the defendant organization and its officers.

The Court anticipates that the parties will respect these interests and cooperate so that the tournament will begin on schedule and the games will be played as they were during the regular season.

Accordingly,

IT IS ORDERED that plaintiff's Application for Temporary Restraining Order is granted. Defendants are enjoined from preventing or attempting to prevent plaintiff from participating fully, coaching on the field, or otherwise being involved to the full extent of his responsibilities as coach, under the auspices of Little League Baseball, Inc. Furthermore, defendants are enjoined from intimidating or threatening players, parents of players, coaches, officials, umpires, or other persons involved in Little League Baseball and from attempting to induce them to boycott games because of plaintiff's participation.

IT IS FURTHER ORDERED that plaintiff shall post a bond in the amount of $2,500.00.

IT IS FURTHER ORDERED that the parties shall appear before this Court for a hearing on plaintiff's Request for a Preliminary Injunction on Friday, July 17, 1992 at 3:30 p.m. The hearing will be vacated only if the parties file a stipulation to extend the temporary restraining order on or before Thursday, July 16, 1992 at 5:00 p.m.