**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRICIA LOCKETT,
              *Plaintiff-Appellant,*

v.

CATALINA CHANNEL EXPRESS, INC.,
              *Defendant-Appellee.*

No. 05-56483

D.C. No.
CV-02-08833-RJK

OPINION

Appeal from the United States District Court
for the Central District of California
Robert J. Kelleher, Senior Judge, Presiding

Argued and Submitted
June 4, 2007—Pasadena, California

Filed August 9, 2007

Before: Cynthia Holcomb Hall and Consuelo M. Callahan,
Circuit Judges, and James L. Robart,* District Judge.

Opinion by Judge Callahan;
Dissent by Judge Hall

---

*The Honorable James L. Robart, United States District Judge for the
Western District of Washington, sitting by designation.

**COUNSEL**

Russell C. Handy, Center for Disability Access, LLP, of San Marcos, California, for plaintiff-appellant Tricia Lockett.

Peter S. Forgie, Forgie & Leonard, LLP, of Santa Monica, California, for defendant-appellee Catalina Channel Express, Inc.

**OPINION**

CALLAHAN, Circuit Judge:

Catalina Channel Express ("CCE") operates a ferry between Long Beach and Catalina Island. In response to requests by a frequent passenger for an area free of animal dander, CCE adopted a policy of excluding animals from the Commodore Lounge, a separate and more expensive section of the ferry. Tricia Lockett is legally blind and uses a service animal, a guide dog, to assist her. On September 2, 2002, Lockett requested a ticket in the Commodore Lounge, but CCE refused to sell her a ticket because it would not allow her to take her guide dog into the area. Two weeks later CCE changed its policy, but two months later Lockett filed this lawsuit alleging that CCE violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. On cross-motions for summary judgment, the district court granted summary judgment for CCE. We affirm on the narrow ground that CCE, when suddenly faced with a possible threat to the health and safety of its passengers, made a one-time reasonable judgment under 28 C.F.R. § 36.208 while it investigated the competing interests.

I

CCE operates a public ferry boat service between Long Beach and Catalina Island. The trip takes an hour each way. In addition to the general passenger seating area, the Commodore Lounge, located on the second deck, serves as a semi-private sitting area for a small number of passengers who pay an additional ten dollars each way for access. The Commodore Lounge has leather seats that slightly recline and have tray tables and head rests. Also, Commodore Lounge passengers have the privilege of priority boarding and are served a complimentary drink.

In 2000, CCE received a request for a dander-free zone from a frequent passenger who claimed to be allergic to animals. CCE determined that the Commodore Lounge was the only area on the ferry where passengers could be effectively insulated from contact with animals and made dander-free.[1] In early 2001, CCE instituted a policy prohibiting all animals, including service animals, from the Commodore Lounge.

Lockett is legally blind and uses a service animal, a guide dog, to assist her in travel and mobility. On September 2, 2002, she sought to purchase a ticket to travel on the ferry to Catalina Island in the Commodore Lounge. CCE declined to sell Lockett a ticket for the Commodore Lounge because it did not permit any animals, even guide dogs, in the Commodore Lounge. CCE did sell Lockett a general passage ticket and Lockett traveled to Catalina Island and back to Long Beach in the main seating area.

CCE changed its animal policy two weeks later to allow service animals in the Commodore Lounge. CCE estimates that now service animals are brought into the Commodore Lounge once or twice a year.

II

On November 18, 2002, Locket filed a complaint in the United States District Court for the Central District of California seeking damages and injunctive relief under the ADA, certain California statutes, and common law. Lockett stated that the experience of being denied a ticket to the Commodore Lounge was "embarrassing and frustrating and humiliation [sic]."

---

[1]Although the district court observed that the parties disagreed on whether the case concerned architectural barriers as defined under the ADA standards, it declined to decide the case on that issue. We do not address any issue concerning architectural barriers because the parties have not raised any such issue on appeal.

In the fall of 2004, the parties filed motions for summary judgment. On August 24, 2005, the district court entered an order denying Lockett's motion for summary judgment and granting CCE's motion for summary judgment. The district court rejected Lockett's contention that CCE violated 42 U.S.C. § 12182(b)(1)(A)(ii) in failing to modify its policies to permit service animals into the Commodore Lounge.[2] It held that CCE had provided Lockett with "different and separate accommodations" as allowed by 42 U.S.C. § 12182(b)(1)(A)(iii).[3] As a separate basis for granting CCE summary judgment, the district court held that CCE's refusal to admit Lockett's service animal to the Commodore Lounge was permissible under 28 C.F.R. §§ 36.208, 36.301(a), and 36.302(c) based on health and safety concerns. Lockett filed a timely appeal.

---

[2]42 U.S.C. § 12182(b)(1)(A)(ii) reads:

(ii)   Participation in unequal benefit

It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

[3]42 U.S.C. § 12182(b)(1)(A)(iii) reads:

(iii)   Separate benefit

It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

III

As noted by the district court, pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review the district court's grant of summary judgment for CCE de novo. *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1130 (9th Cir. 2003). We "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* at 1131.

IV

**[1]** It is undisputed that Lockett is a member of a protected class of disabled persons under 42 U.S.C. § 12102(2). In light of the purposes of the ADA, CCE's refusal to sell Lockett a ticket to the Commodore Lounge cannot be justified as a separate arrangement under 42 U.S.C. § 12182(b)(1)(A)(iii). This subsection allows for a separate arrangement or facility when "necessary to provide the individual . . . with a good, service, facility, privilege, advantage, or accommodation, . . . as effective as that provided to others." For this subsection to come into play, there must be (1) a separate arrangement or facility, which (2) was necessary for the disabled person, and (3) was "as effective as" that for which it was a substitution. Here, CCE did not offer Lockett a separate arrangement or facility, but relegated her to the general passenger area. Thus, this subsection is not applicable. Moreover, even if it were applicable, the general passenger area was not equivalent to — not "as effective as" — the Commodore Lounge. The record shows that some travelers were willing to pay a premium for a seat that reclines, early boarding, and being served a cookie and a drink. In other words, the Commodore Lounge is the equiva-

lent of a first class section on an airplane. Construing the subsection to allow the relegation of an individual with a disability to tourist class, or to the back of the airplane, on the rationalization that the individual was allowed to travel on the same plane would distort the letter and intent of the subsection. Furthermore, even if it could be argued that there was a factual question as to whether the general passenger area was "as effective as" the Commodore Lounge, that question would be a matter for the jury, and could not be determined on summary judgment. CCE's relegation of Lockett to the general passenger area was not a permissible accommodation under 42 U.S.C. § 12182(b)(1)(A)(iii).

V

We recognize, however, that Lockett's request for passage in the Commodore Lounge created a dilemma for CCE. Its prohibition on animals in the Commodore Lounge was adopted in response to a passenger's assertion of an allergy to animal dander. Accordingly, CCE's employees had to decide on the spot whether to potentially expose passengers in the Commodore Lounge to dander or to ask Lockett to ride in the general passenger area. We read 29 C.F.R. § 36.208 as permitting CCE to ask Lockett to travel in the general passenger area while it investigated the matter.[4]

---

[4]28 C.F.R. § 36.208 reads:

(a)    This part does not require a public accommodation to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of that public accommodation when that individual poses a direct threat to the health or safety of others.

(b)    Direct threat means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services.

(c)    In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make

**[2]** This regulation provides that an individual can be denied an accommodation when the individual "poses a direct threat to the health or safety of others." Subsection (b) notes that direct threat means that the significant risk "cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services." Subsection (c) states:

> In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk.

**[3]** Applying the regulation to the situation presented in this case, it appears that CCE was faced with a potential threat to the health and safety of others, and that the threat could not be eliminated by a modification of the policy. Accordingly, CCE had to make a reasonable judgment based on the available medical knowledge and objective evidence.[5] We hold

> an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk.

[5]There is no indication that CCE knew, or should have known, whether any passenger in the Commodore Lounge on September 2, 2002, was allergic to animal dander. Moreover, there is no indication that CCE knew, or should have known, the severity of any passenger's alleged allergy to dander. However, it is not difficult to conceive of the potential health ramifications for a passenger with a severe allergy to animal dander who, hav-

that CCE's one-time request that Lockett accept passage in the general passenger area was a reasonable judgment under 28 C.F.R. § 36.208.

We hasten to note that this holding is limited to CCE's single determination made on September 2, 2002, and should not be read as suggesting that CCE's change in its policy to allow service animals in the Commodore Lounge was not compelled under the ADA. To the contrary, it is clear that ultimately the entity asserting a "direct threat" as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others. *See Bragdon v. Abbot*, 524 U.S. 624, 649-50 (1998). Indeed, CCE may well have violated the ADA had it not changed its policy.[6]

---

ing been informed that animals are not allowed into the Commodore Lounge, is then confronted with a service dog entering the area. We cannot say that it was unreasonable for CCE to ask Lockett to ride in the general passenger area with her service animal while it ascertained how severe an allergic reaction to animal dander was medically possible or likely, and informed its riders that service animals would be allowed in the Commodore Lounge.

[6]28 C.F.R. 36.302 reads, in relevant part:

(a)   General. A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

. . .

(c) Service animals—

(1)   General. Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability.

However, in this case we are asked to determine whether CCE's failure to immediately accede to Lockett's request supports a cause of action. Neither party has cited any case directly on point and we have not found such a case.[7] Most of the cases we have reviewed addressed a provider's ultimate decision concerning the accommodation it is willing to make. For example, in *Anderson v. Little League Baseball, Inc.*, 794 F. Supp. 342, 345-46 (D. Ariz. 1992), the district court issued a temporary restraining order because the defendant adopted a rule prohibiting a person in a wheelchair from being in a coach's box on the field, and had not conducted an individualized assessment. In *Bombrys v. City of Toledo*, 849 F. Supp. 1210, 1221 (N.D. Ohio 1993), the district court granted relief against the city's blanket exclusion of insulin-dependent diabetics from the police force. Also, in *Doe v. District of Columbia*, 796 F. Supp. 559, 573 (D.D.C. 1992), the district court granted relief because the city had withdrawn its offer of employment based on the plaintiff being HIV-positive. None of these cases concerned a lawsuit brought after the defendant had made the requested accommodation under the ADA, but challenging the defendant's failure to make an accommodation as soon as it was first requested.[8]

**[4]** Faced with an issue of first impression, we conclude that CCE's single decision on September 2, 2002, to ask Lockett to ride in the general passenger area was a reasonable judgment under 28 C.F.R. § 36.208. On that day, the ticket

---

[7]The district court cited only an unpublished district court case, *Pool v. Riverside Health Servs., Inc.*, No-941430-PFK, 1995 WL 519129 (D. Kan. Aug. 25, 1995). In that case, the district court determined that Ms. Pool, who was confined to a wheelchair, could not state a cause of action under the ADA based on the hospital's refusal to allow her to take her "assistance dog" into the hospital's emergency services department where Ms. Pool's fiancé was being treated. Although this case shows that not all refusals to accommodate are actionable, it is too factually distinct from the case before this court to provide much guidance.

[8]At the time that Lockett filed her complaint, CCE had already changed its policy to allow service animals in the Commodore Lounge.

seller was required to make a "reasonable judgment" based on "current medical knowledge" and the "best available objective evidence." The ticket seller knew only that CCE had adopted a policy based on a passenger's alleged allergy, and there is no suggestion that the person had any training to evaluate the possible effect on an allergic passenger of the presence of a service animal in the Commodore Lounge. With the ferry scheduled to depart, selling Lockett a ticket for the general passenger area was a reasonable judgment. It allowed CCE to provide Lockett with transportation to Catalina Island, as she requested, albeit without the benefits and the cost of the Commodore Lounge.

**[5]** We further hold that in this instance, the determination that selling Lockett a ticket to the general passenger area was a reasonable judgment under 28 C.F.R. § 36.208 was properly made on the parties' cross-motions for summary judgment. All the evidence as to what the CCE employees knew on September 2, 2002 was before the district court. Lockett does not allege that she was precluded from presenting relevant evidence. Instead, on appeal, she argues that the district court should have granted her summary judgment on the liability issue. We agree with the district court that the evidence required a finding that CCE's decision on September 2, 2002 to relegate Lockett to the general passenger area was a reasonable judgment under 28 C.F.R. § 36.208. Accordingly, on this ground only, the district court's order is **AFFIRMED**.

---

HALL, Circuit Judge, dissenting:

Because I find that Catalina Channel Express failed to make the individualized assessment required under the Americans with Disabilities Act, and failed to consider whether reasonable modifications could be made in this individual case, I respectfully dissent.

Under the ADA, a place of public accommodation may exclude a disabled individual from a service or opportunity, if that individual "poses a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3). A "direct threat" is defined as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." *Id.* "When determining whether an individual poses a 'direct threat,' a place of public accommodation must not base its calculus on stereotypes or generalizations about the effects of a disability but rather must make 'an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence.' " *Montalvo v. Radcliffe*, 167 F.3d 873, 877 (4th Cir. 1999) (quoting 28 C.F.R. § 36.208(c)). This assessment must consider the nature, duration, and severity of the risk. 28 C.F.R. § 36.208.

Under this rule, a good faith belief that a risk exists is not sufficient. *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). The person making the relevant decision not to provide the service must base his decision on the objective information available to him. *See id.* In *Bragdon*, a dentist had declined to see an HIV-positive patient on the basis that she would have posed a risk to the health of others. The Supreme Court used the opportunity to elaborate on the "direct threat" standard:

> The existence, or nonexistence, of a significant risk must be determined from the standpoint of the person who refuses the treatment or accommodation, and the risk assessment must be based on medical or other objective evidence. As a health care professional, petitioner had the duty to assess the risk of infection based on the objective, scientific information available to him and others in his profession. His belief that a significant risk existed, even if maintained in good faith, would not relieve him from liability. To use the words of the question presented,

> petitioner receives no special deference simply
> because he is a health care professional.

*Id.* However, the Court has previously held that medical judgments based on the duration, severity and nature of the risk are entitled to deference. *See School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 288 (1987).

The risk to others must also be "significant." 42 U.S.C. § 12182(b)(3). The ADA's statutory language regarding the threat to others was adopted from *Arline,* a case dealing with infectious disease. *See Bragdon*, 524 U.S. at 649 (discussing the influence of *Arline*). As the Court acknowledged, "*Arline* and the ADA do not ask whether a risk exists, but whether it is significant." *Bragdon*, 524 U.S. at 649. In *Doe v. District of Columbia*, 796 F. Supp. 559 (D.D.C. 1992), for example, the district court held that hiring an HIV-positive firefighter would pose no "measurable risk" of infection to other firefighters or the public. *Id.* at 569.

The ADA's required analysis does not end, however, with a finding of significant risk. If it finds such a threat, the service provider must then ascertain "whether reasonable modifications of policies, practices, or procedures will mitigate the risk, to the point of eliminating it as a significant risk." *Montalvo*, 167 F.3d at 877 (quoting 28 C.F.R. § 36.208(c) and 42 U.S.C. § 12182(b)(3))(internal punctuation omitted). As the Fourth Circuit explained in *Montalvo*, one of the few appellate decisions dealing with these provisions, "a failure to make a reasonable modification is itself an act of discrimination unless the place of public accommodation can demonstrate that implementing the modification would fundamentally alter the nature of the program." *Id.*

The interaction between Lockett and Catalina Channel Express falls far short of this statutory procedure. First, CCE made no "individualized assessment" as to the health effects of bringing Lockett's dog aboard. Though it had limited

objective evidence, it could have investigated whether the female passenger who had complained about dander was in fact on the ship, or whether there were other allergic passengers in the lounge. Though CCE did not appear to act with malice, pure intentions and good faith are not sufficient under the ADA.

Second, the risk to others was not found, objectively, to be significant. The frequent passenger who allegedly requested a dander-free environment (a passenger who was never deposed, let alone named, by CCE) did not suggest this policy was necessary as a matter of serious public health concern, along the lines of an infectious disease. It bears repeating that CCE never determined whether any allergic passenger would even be in the lounge area.

The opinion in this case treats the decision about Lockett as an individualized assessment, but it appears that the ticket agent was simply applying CCE's policy as a matter of reflex. Under the ADA, the standard for judging the application of a policy is the same as the standard for one-time action: "Safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. 36.301. In *Leiken v. Squaw Valley Ski Corp.*, 1994 WL 494298, 3 A.D. Cases 945 (E.D. Cal. 1994), the district court granted a preliminary injunction against a ski resort's policy of barring wheelchairs from the cable car used to access a high-altitude recreation area. The resort had justified the policy on the grounds that wheelchairs would hinder any emergency evacuation of the cable car. The district court held that the ski resort "cannot justify its policy as a series of individual safety-based exclusions because it has not performed individualized risk assessments." *Id.*; *see also Bombrys v. City of Toledo*, 849 F. Supp. 1210, 1216 (N.D. Ohio 1993); *Anderson v. Little League Baseball, Inc.*, 794 F. Supp. 342, 345 (D. Ariz. 1992). As in these cases, CCE made a blanket policy and applied it to Lockett without considering the individual facts of her case.

Finally, CCE's employees did not investigate whether a "reasonable modification" would neutralize any health threat. Though the lounge was allegedly the only area where allergic passengers could be segregated from animals, CCE did not investigate whether there were in fact other allergic passengers aboard, whether any passengers could be persuaded to sit elsewhere, or whether Lockett could be seated in any particular part of the lounge where the dog's dander would pose the least risk.

Though it was no doubt wise and well-intentioned for CCE to eliminate this policy following the Lockett incident, this change of course does not remedy whatever damage Lockett alleges from the initial violation. Any sentiment that her claim is too small to be worthwhile, or that CCE should not be punished when it has acted admirably otherwise, is an issue best left to the jury when determining damages. Accordingly, I dissent.