# Illinois Official Reports

## Supreme Court

---

**M.U. v. Team Illinois Hockey Club, Inc., 2024 IL 128935**

---

Caption in Supreme Court:
M.U., a Minor, By and Through Her Parents Kelly U. and Nick U., Appellee, v. TEAM ILLINOIS HOCKEY CLUB, INC., *et al*., Appellants.

Docket No.
128935

Filed
March 8, 2024

Decision Under Review
Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Bonnie M. Wheaton, Judge, presiding.

Judgment
Appellate court judgment affirmed.
Circuit court judgment reversed.
Cause remanded.

Counsel on Appeal
James M. McGing, of Miller & McGing Law Firm, of Chicago, and Timothy D. Elliott, Heather L. Kramer, and Daniel J. Szczesny, of Rathje Woodward LLC, of Wheaton, for appellants.

Charles D. Wysong and Justin M. Tresnowski, of Hughes, Socol, Piers, Resnick & Dym, Ltd., of Chicago, for appellee.

Thomas Brejcha and Joan M. Mannix, of Thomas More Society, of Chicago, *amicus curiae*.

Lindsey M. Hogan, of Faegre Drinker Biddle & Reath LLP, of Chicago, for *amicus curiae* USA Hockey, Inc.

Ryan W. Blackney and Matthew T. Connelly, of Freeborn & Peters LLP, of Chicago, and Charles G. Wentworth, of Law Office of Lofgren & Wentworth, P.C., of Glen Ellyn, for *amicus curiae* Three Fires Council, Inc., Boy Scouts of America.

Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, Sarah A. Hunger, Judith Levitan, and Emily Roznowski, Assistant Attorneys General, of Chicago, of counsel), *amicus curiae*.

Barry C. Taylor, Rachel M. Weisberg, and Paul W. Mollica, of Equip for Equality, Caroline Manley, of Center for Disability & Elder Law, Kenneth M. Walden, of Access Living of Metropolitan Chicago, Aneel L. Chablani, of Chicago Lawyers' Committee for Civil Rights, Caroline Chapman, of Legal Council for Health Justice, Daniel P. Lindsey and Josephine (Jamie) Schulte, of Legal Aid Chicago, and Stephanie Ferst Altman, of Shriver Center on Poverty Law, all of Chicago, for *amici curiae* Equality Illinois *et al.*

Justices          JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1      At issue in this appeal is whether a youth hockey organization that leases and operates a portion of a public ice arena is subject to section 5-102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/5-102(A) (West 2020)) for alleged discrimination against a person with a disability in the full and equal enjoyment of a public place of accommodation. The circuit court of Du Page County held that the defendants in this case were not bound by section 5-102(A) and dismissed the plaintiff's complaint with prejudice for failure to state a cause of action. The appellate court reversed and remanded for further proceedings. 2022 IL App (2d) 210568. For the reasons that follow, taking as true the well-pleaded factual allegations in the plaintiff's complaint, we hold that the defendants are subject to section 5-102(A). Accordingly, we affirm the appellate court's judgment reversing the circuit court's judgment, and we remand the cause

to the circuit court for further proceedings consistent with this opinion.

¶ 2                                          BACKGROUND

¶ 3        On April 20, 2021, the minor plaintiff, M.U., through her parents, Kelly U. and Nick U., filed a timely verified complaint in the circuit court against the defendants, Team Illinois Hockey Club, Inc. (Team Illinois), and the Amateur Hockey Association of Illinois, Inc. (AHAI).[1] The complaint made the following allegations, which we accept as true for purposes of this appeal. See *DeHart v. DeHart*, 2013 IL 114137, ¶ 18 (in ruling on a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)), a court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that can be drawn therefrom).

¶ 4        According to the complaint, Team Illinois is an Illinois not-for-profit corporation that operates youth hockey teams as part of the AHAI and USA Hockey, Inc. (USA Hockey), system. Larry Pedrie is the hockey director and primary executive in charge of all Team Illinois operations. Pedrie is also the coach for the Team Illinois Girls 14U team. AHAI, the Illinois affiliate of USA Hockey, is an Illinois not-for-profit corporation that regulates and controls youth hockey leagues, teams, and activities throughout Illinois, including Team Illinois. Mike Mulally is a member of the AHAI board of directors and the central district director for USA Hockey.

¶ 5        Team Illinois offers activities and services that are open to the public, including club hockey teams, hockey practices, clinics, workouts, sessions to review tapes, team lunches and dinners, travel opportunities, coaching, and the opportunity to play in hockey games and tournaments. For its activities and services, Team Illinois leases and operates the Seven Bridges Ice Arena (Seven Bridges) in Woodridge, Illinois. Seven Bridges includes ice rinks with space for spectators, locker rooms, training facilities, concessions, offices for Team Illinois, and other related facilities. Seven Bridges is open to the public.

¶ 6        In 2019, M.U. signed up to play hockey with the Girls 14U team run by Team Illinois. The 2019-20 season began in August 2019 and coincided with M.U.'s first year of high school. On November 13, 2019, M.U. and her mother informed Pedrie, the team's coach, that M.U. was being treated for anxiety, depression, and suicidal thoughts. M.U.'s mother "shared [with Pedrie] that [M.U.] had the support of mental health professionals and expressed that hockey was an important and supportive aspect of [M.U.'s] life." After this conversation, M.U. participated in a practice session with her teammates. On the following day, Pedrie spoke with Mulally by phone about M.U.'s mental health. According to the complaint, Pedrie and Mulally "agreed on that phone call to banish [M.U.] from Team Illinois until she was able to participate 100% in Team Illinois activities."

¶ 7        Pedrie called M.U.'s parents and informed them that M.U. was banned from all Team Illinois activities due to her suicidal thoughts from depression and anxiety and was not allowed to return until she was recovered and able to participate in 100% of Team Illinois activities. Beginning on November 14, 2019, M.U. was banned from attending all Team Illinois events, practices, games, and tournaments, and she was cut off from team communications and

---

[1]Prior to filing the instant complaint, M.U. exhausted her administrative remedies through the Illinois Department of Human Rights.

prohibited from any contact with Team Illinois players. Pedrie subsequently sent an e-mail to the other players' families instructing them to have no contact with M.U. in person or by phone, text, or social media. The e-mail stated that M.U. had been removed " 'from any involvement and or communication with our team and her teammates' " until she was back to " 'the positive, happy, smiling kid that we all know she is.' " On December 11, 2019, M.U. was allowed to return to Team Illinois activities after her parents retained legal counsel and threatened litigation against the defendants.

¶ 8    The complaint alleged that M.U. is a person with a disability as defined in the Act. See 775 ILCS 5/1-103(I) (West 2020). It alleged that Seven Bridges and other unspecified facilities used and controlled by Team Illinois are "places of public accommodation" as defined in section 5-101(A) of the Act. See *id.* § 5-101(A). It alleged that both Team Illinois and AHAI are subject to the Act because they are "persons" as defined in the Act. See *id.* § 5-102(A) ("It is a civil rights violation for any person on the basis of unlawful discrimination to *** [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation[.]"); see also *id.* § 1-103(L) (" 'Person' includes one or more individuals, partnerships, associations or organizations, *** or *** corporations ***.").

¶ 9    The first two counts of the complaint alleged that Team Illinois discriminated against M.U. due to her disability (count I) or, alternatively, because Team Illinois perceived her to have a disability (count II). Specifically, counts I and II alleged that Team Illinois "segregated, isolated, and excluded [M.U.] from participating in [and being present at] Team Illinois programs, events, and activities at Seven Bridges Ice Arena and other places of public accommodation," which "denied her the full and equal enjoyment of the facilities and services of places of public accommodation offered through Team Illinois," in violation of section 5-102(A) of the Act (*id.* § 5-102(A)). Count III alleged that AHAI, through its board member and agent, aided, abetted, and/or conspired with Team Illinois to commit a violation of the Act by discriminating against M.U. See *id.* § 6-101(B) ("It is a civil rights violation for a person, or for two or more persons to conspire, to *** [a]id, abet, compel or coerce a person to commit any violation of this Act[.]"). The complaint sought declaratory and injunctive relief, damages, fees, and costs.

¶ 10    On July 7, 2021, the defendants filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). In their motion, the defendants argued, *inter alia*, that the complaint failed to state a cause of action because it failed to allege facts showing that M.U. was denied the full and equal enjoyment of the facilities, goods, and services of a public place of accommodation.[2] The defendants contended that the complaint alleged that Team Illinois denied M.U. the full and equal enjoyment of a *team and its activities*, not a *place*. The defendants contended that this allegation was insufficient to state a claim because Team Illinois itself is not a "public place of accommodation" as defined in the Act (see 775 ILCS 5/5-101(A) (West 2020)). Alternatively, the defendants argued that the complaint failed to state a claim that M.U. was denied the full and equal enjoyment of the facilities, goods, and services of Seven Bridges because it did not allege that she was banned from the entire facility. Although M.U. was excluded from the

[2]The defendants did not challenge the plaintiff's allegation that she was a person with a disability. That issue was not before the trial court, nor is it before this court. Our decision in this case is limited to the issues that were properly preserved in the lower courts and presented by the parties in this court.

portions of the facility that were reserved for members of Team Illinois, the defendants argued that M.U. retained the right to access the portions of the facility that were open to members of the public.

¶ 11    Following a hearing on September 13, 2021, the circuit court entered an order granting the defendants' motion and dismissing the complaint with prejudice. On appeal, the appellate court reversed the order of dismissal and remanded the cause to the circuit court for further proceedings. 2022 IL App (2d) 210568, ¶ 50. The court first agreed with the defendants' argument that Team Illinois itself is not a "public place of accommodation" under the Act because it is not a physical place. *Id.* ¶¶ 23-34. The appellate court rejected the defendants' second argument, however. It held that the complaint stated a cause of action for a section 5-102(A) violation because it alleged facts to establish that (1) Seven Bridges is a "place of public accommodation," (2) Team Illinois is a " 'person,' " and (3) Team Illinois denied to M.U. the full and equal enjoyment of the portions of the Seven Bridges facility (4) that were leased and operated by Team Illinois. *Id.* ¶¶ 35-43. The parties did not identify, nor did the appellate court's research reveal, any Illinois case on point. *Id.* ¶ 36. The court, therefore, looked to federal precedent interpreting Title III of the Americans with Disabilities Act of 1990 (ADA), which contains similar language to article 5 of the Act (775 ILCS 5/art. 5 (West 2020)). 2022 IL App (2d) 210568, ¶ 36 (citing 42 U.S.C. §§ 12181(7), 12182(a) (2018)).

¶ 12    The appellate court held that *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) (*Martin II*), "translates directly to the instant matter." 2022 IL App (2d) 210568, ¶ 39. In *Martin II*, a professional golfer with a physical disability that prevented him from walking a golf course challenged a Professional Golf Association (PGA) Tour rule that prohibited the use of golf carts in PGA Tour events. *Martin II*, 532 U.S. at 669. The threshold issue in the case was whether the PGA's tours and qualifying rounds were subject to Title III of the ADA, which governs public accommodations. *Id.* at 675-77. The United States Supreme Court held that they were, reasoning that the events occur at public golf courses, which are specifically enumerated as "public accommodation[s]" under the ADA. *Id.* at 677. Because the PGA Tour leased and operated the golf courses for its qualifying rounds and tours, the Court held that, "[a]s a lessor and operator of golf courses, then, [it] must not discriminate against any 'individual' in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations' of those courses." *Id.* (quoting 42 U.S.C. § 12182(a) (2000)). Importantly, the Court also held that Title III of the ADA extended not only to the areas of the golf courses that were open to spectators during PGA tour events but also to the areas that were reserved for qualified competitors in the events. *Id.* at 679-81.

¶ 13    The appellate court below compared the circumstances in the case at bar favorably to *Martin II*, holding:

"Like the PGA Tour in *Martin*, Team Illinois is a membership organization that holds competitive sporting events at a place of public accommodation. Like the PGA Tour, which conceded that 'its tournaments are conducted at places of public accommodation' [citation], Team Illinois does not dispute that Seven Bridges is a place of public accommodation under the Act. Neither 'ice rink' nor 'ice arena' is listed in the Act as an example of a place of public accommodation. Nevertheless, by application of the interpretive canon *ejusdem generis*, these places are 'others such like' a golf course (also at issue in *Martin*), which is specifically listed as a place of public

accommodation under the Act. See 775 ILCS 5/5-101(A)(13) (West 2020) (concerning 'a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation'). Similar to the PGA Tour in *Martin*, although Team Illinois itself is not a place of public accommodation, it nevertheless is subject to the Act because, as alleged in the complaint, it barred plaintiff on the basis of her disability from participating in Team Illinois events, like hockey games and tournaments, that were held at a place of public accommodation that it leased and operated. Team Illinois, by virtue of its lease and operation of a place of public accommodation, offered the general public at least three distinct services: (1) watching Team Illinois competitions; (2) open tryouts to earn membership on the team; and (3) the opportunity to actually play in competitive hockey games as a member of the team, if selected. Like in *Martin*, even though earning a spot to play in competitive athletics for Team Illinois is distinctly more difficult and expensive than simply watching the team play, it nevertheless is a privilege that Team Illinois makes available to the public at Seven Bridges. [Citation.]
     ***

     *Martin* instructs that, once a place constitutes a 'place of public accommodation,' the service allegedly denied to the plaintiff need not have been available to the general public. The fact that Team Illinois is selective in choosing its members is unimportant because, under *Martin*, a facility does not lose its status as a place of public accommodation merely because entry to the field of play during athletic competitions is limited. [Citation.] Accordingly, because plaintiff earned a coveted place on Team Illinois's roster, it could not then deny her on the basis of her disability the privilege of participation at athletic events held at places of public accommodation, such as Seven Bridges." 2022 IL App (2d) 210568, ¶¶ 39-41.

Based on this analysis, the appellate court concluded that the allegations in M.U.'s complaint were sufficient to subject the defendants to section 5-102(A) of the Act. It held, therefore, that the trial court erred in dismissing the complaint under section 2-615 for failure to state a cause of action. *Id.* ¶ 43.

¶ 14     This court allowed the defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021). We allowed leave to three organizations to file briefs as *amici curiae* in support of the defendants' position.[3] Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). We also allowed leave to the Illinois Attorney General and a separate joint group of organizations[4] to file briefs as *amici curiae* in support of M.U.'s position. *Id.*

### ANALYSIS

¶ 15     On appeal to this court, the defendants argue that the trial court properly dismissed the complaint because it failed to state a cause of action for a violation of the Act. A motion filed

---

[3]These organizations include the Thomas More Society; USA Hockey, Inc.; and Three Fires Council, Inc., Boy Scouts of America.

[4]These organizations include Equip for Equality, Access Living of Metropolitan Chicago, the Center for Disability & Elder Law, the Chicago Lawyers' Committee for Civil Rights, the Epilepsy Foundation of Greater Chicago, Legal Council for Health Justice (IL), Equality Illinois, the Shriver Center on Poverty Law, and Legal Aid Chicago.

under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) challenges the legal sufficiency of a complaint based on defects apparent on the face of the complaint. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). A complaint should not be dismissed pursuant to section 2-615 unless the plaintiff is not entitled to recovery under any possible set of facts. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61. On appeal of a dismissal order, a reviewing court must determine whether the allegations in the complaint, taken as true and viewed in the light most favorable to the nonmovant, state a cause of action upon which relief may be granted. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47. We apply a *de novo* standard of review to orders entered pursuant to section 2-615. *Marshall*, 222 Ill. 2d at 429. Resolution of this appeal entails statutory interpretation, an issue of law that is likewise subject to *de novo* review. *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2019 IL 124283, ¶ 21.

¶ 16 In construing the statute, we are guided by the principle that our primary goal is to ascertain and effectuate the intent of the legislature. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). The best indicator of legislative intent is the language in the statute, given its plain and ordinary meaning. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 24. Where the language of the statute is clear and unambiguous, we will give effect to its plain meaning without resorting to supplementary aids of statutory construction. *Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002). We must consider the language of the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *Van Dyke v. White*, 2019 IL 121452, ¶ 46.

¶ 17 The legislature's objectives in enacting the Act are explicitly stated in section 1-102 (775 ILCS 5/1-102 (West 2020)). One of the public policies set forth in subsection 1-102(A) is

> "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations." *Id.* § 1-102(A).

As remedial legislation, the Act must be liberally construed to achieve its purpose—here, the prevention of unlawful discrimination in public accommodations for all individuals. *Id.*; see *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 140 (2009); *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 214 (1994) (Nickels, J., dissenting, joined by Freeman, J.).

¶ 18 Article 5 of the Act governs discrimination in the availability of public accommodations. 775 ILCS 5/art. 5 (West 2020). Section 5-102(A) of the Act states: "It is a civil rights violation for any person on the basis of unlawful discrimination to *** [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." *Id.* § 5-102(A). "Unlawful discrimination" is defined as "discrimination against a person because of his or her actual or perceived: race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service as those terms are defined in this Section." *Id.* § 1-103(Q).

¶ 19    The Act defines a "disability," in part, as "a determinable physical or mental characteristic of a person, *** the history of such characteristic, or the perception of such characteristic by the person complained against, *** and which characteristic *** is unrelated to a person's ability to utilize and benefit from a place of public accommodation." *Id.* § 1-103(I)(4).

¶ 20    A "place of public accommodation" is defined, in its entirety, as follows:

" 'Place of public accommodation' includes, but is not limited to:

(1) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than 5 units for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(2) a restaurant, bar, or other establishment serving food or drink;

(3) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(4) an auditorium, convention center, lecture hall, or other place of public gathering;

(5) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(6) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(7) public conveyances on air, water, or land;

(8) a terminal, depot, or other station used for specified public transportation;

(9) a museum, library, gallery, or other place of public display or collection;

(10) a park, zoo, amusement park, or other place of recreation;

(11) a non-sectarian nursery, day care center, elementary, secondary, undergraduate, or postgraduate school, or other place of education;

(12) a senior citizen center, homeless shelter, food bank, non-sectarian adoption agency, or other social service center establishment; and

(13) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." *Id.* § 5-101(A).

¶ 21    The plain language in section 5-102(A) is clear and unambiguous. The statute prohibits a "person" from unlawfully discriminating against another by denying or refusing "the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." *Id.* § 5-102(A). Comparing the statutory language to the allegations in M.U.'s complaint, we first find that Team Illinois is a "person" as defined in the Act. The Act defines a "person" as "one or more individuals, partnerships, associations or organizations, labor organizations, labor unions, joint apprenticeship committees, or union labor associations, corporations, the State of Illinois and its instrumentalities, political subdivisions, units of local government, legal representatives, trustees in bankruptcy or receivers." *Id.* § 1-103(L). As alleged in the complaint, Team Illinois fits squarely within this definition as both a "corporation" and an "organization." Next, we find that Seven Bridges is a "place of public accommodation" within the meaning of the Act. The definition of a "place of public accommodation" set forth above

- 8 -

comprises a nonexclusive list of various places and facilities. *Id.* § 5-101(A). Although the list does not include an "ice arena" or "ice rink," it does include "a gymnasium, health spa, bowling alley, golf course, or *other place of exercise or recreation*." (Emphasis added.) *Id.* 5-101(A)(13). An ice arena is obviously a "place of exercise or recreation." Moreover, applying the doctrine of *ejusdem generis*, an ice arena is "such like" a gymnasium, bowling alley, or golf course as to be given the same interpretation in this context. See *Board of Trustees of Southern Illinois University*, 159 Ill. 2d at 211 ("*ejusdem generis* provides that when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those 'others such like' the named persons or things").

¶ 22    The application of section 5-102(A) to the instant complaint is straightforward. In her complaint, M.U. alleges that Team Illinois discriminated against her because of her disability, *i.e.*, depression and anxiety, or because Team Illinois perceived her to have a disability. The complaint alleges that Team Illinois (a "person") leases and operates portions of Seven Bridges, a "place of public accommodation." It alleges that Team Illinois "segregated, isolated, and excluded [M.U.] from participating in Team Illinois programs, events, and activities at Seven Bridges" because of her disability and, by doing so, "denied her the full and equal enjoyment of the facilities and services" of a place of public accommodation. Accepting as true these well-pleaded facts, as well as the reasonable inferences arising therefrom, we hold that the complaint, on its face, pleads a cause of action for unlawful discrimination in the availability of public accommodations under section 5-102(A).

¶ 23    The defendants challenge this straightforward application of the plain statutory language. They contend that Team Illinois is not subject to section 5-102(A) for its conduct as pleaded in the complaint because (1) Team Illinois does not own Seven Bridges and therefore has no authority to bar M.U. from the entire Seven Bridges facility, (2) M.U. was *not* barred from the entire facility, and (3) the portions of Seven Bridges used by Team Illinois, a private entity, were not open to the public at large.[5]

¶ 24    In their briefs, the defendants argue that

"[s]ection 5 [of the Act] cannot be stretched to reach all manner of organizations, clubs, programs, and businesses based solely on the locations where those organizations may meet or hold events. This is particularly true where—as here—the organization in question has a pre-screening process and is not truly open to the public at large."

The defendants expand on this argument with the following hypothetical:

"When an organization rents, uses, or reserves space for a private event that space is no longer open to the public. When, for example, the Du Page County Bar Association reserves a room at the Wheaton Library for a committee meeting, that room ceases to be open to the public. It is closed for a private event. Members of the public—regardless of who they are—are not permitted to crash that event.

_____

[5]As the appellate court below noted, the defendants did not argue in their motion to dismiss that M.U. failed to plead that she was a person with a disability or that her civil rights were violated. 2022 IL App (2d) 210568, ¶¶ 12, 45 n.5. Thus, these points have been conceded and are not at issue in this appeal.

It is no different for Team Illinois. When Team Illinois' U-14 girls' team uses the locker rooms at Seven Bridges before a game, members of the public are no longer free to simply drop in and use the locker room. Therefore, the portions of Seven Bridges being rented by Team Illinois were not open to the public."

The defendants further argue that M.U. never alleged that she was "barred from using the Seven Bridges facility. On the contrary, she could enter Seven Bridges, watch games, take skating lessons, eat at the restaurant, and skate during free skate. Based on her allegations, M.U. had the same access to Seven Bridges as any other member of the public."

¶ 25    The defendants' arguments essentially boil down to two points: (1) a private organization that occupies a portion of a place of public accommodation is not bound by section 5-102(A) and (2) the only persons with a cause of action under section 5-102(A) are those individuals who have been denied the full and equal enjoyment of the portion of a place of public accommodation that is fully open to the public. We disagree with both points. Neither of these arguments shields Team Illinois from the reach of the statute.

¶ 26    The language in section 5-102(A) does not delineate between the "portions" of a place of public accommodation that are subject to the Act and the "portions" that are not. It does not state that only a member of the "public at large" can file an antidiscrimination claim, nor does it restrict a claim to those portions of the facility that are open to the public at large. The defendants' interpretation reads additional language into the statute to reach the desired result. This court may not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 12. Furthermore, the limitations the defendants seek to read into the Act are contrary to the liberal construction that must be given to the Act. See *Sangamon County Sheriff's Department*, 233 Ill. 2d at 140. Reading the statute liberally, it applies to a member of an organization who, because of her disability, has been denied the "full and *equal* enjoyment" of a place of public accommodation. (Emphasis added.) 775 ILCS 5/5-102(A) (West 2020). In this case, M.U., a member of Team Illinois, alleges that she was denied the full and equal enjoyment of the parts of the facility that remained open to similarly situated individuals—members of Team Illinois. These allegations are sufficient to state a cause of action under section 5-102(A).

¶ 27    Our interpretation of section 5-102(A) is supported by persuasive federal case law construing Title III of the ADA, which contains similar language to section 5-102(A). See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989) (in the absence of relevant state authority, it is appropriate to rely on federal law interpreting similar legislation for guidance); see also *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 38. The general antidiscrimination provision in Title III of the ADA states:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

¶ 28    In *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 996 (9th Cir. 2000) (*Martin I*), a disabled professional golfer filed a discrimination claim against the PGA seeking an exception from the PGA's "walking rule" to allow him to ride a golf cart during PGA competitions. The United

States District Court for the District of Oregon held that the PGA was subject to Title III of the ADA because it owns, operates, and leases golf courses, which the ADA identifies as places of public accommodation. *Id.* On appeal to the United States Court of Appeals for the Ninth Circuit, the PGA argued that, although the golf course was a place of public accommodation with regard to the spectator areas, the competitors' area " 'behind the ropes' " was not a place of public accommodation because the public had no right to enter it. *Id.* at 997. The Ninth Circuit rejected this argument, holding it "too narrowly construe[d] the nature of a public accommodation." *Id.* The court explained:

> "It is true that the general public cannot enter the area 'inside the ropes,' but competitors, caddies, and certain other personnel can. *** The statute does not restrict this definition [of a 'public accommodation'] to those portions of the place of exhibition that are open to the general public. The fact that entry to a part of a public accommodation may be limited does not deprive the facility of its character as a public accommodation. [Citation.] Indeed, the underlying premise of the cases dealing with disabled student athletes is that Title III applies to the playing field, not just the stands." *Id.* at 997-98 (citing *Bowers v. National Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 483-90 (D. N.J. 1998), *Tatum v. National Collegiate Athletic Ass'n*, 992 F. Supp. 1114, 1121 (E.D. Mo. 1998), *Ganden v. National Collegiate Athletic Ass'n*, No. 96 C 6953, 1996 WL 680000, at *8-11 (N.D. Ill. Nov. 21, 1996), and *Anderson v. Little League Baseball, Inc.*, 794 F. Supp. 342, 344 (D. Ariz. 1992)).

See also *Matthews v. National Collegiate Athletic Ass'n*, 179 F. Supp. 2d 1209, 1222-23 (E.D. Wash. 2001).

¶ 29    The Ninth Circuit also rejected the PGA's argument that "the fact that its tournaments are restricted to the nation's best golfers means that the courses on which they play during tournaments *cannot* be places of public accommodation." (Emphasis in original.) *Martin I*, 204 F.3d at 998. The court reasoned that a winnowing process that begins with a competition being open to members of the public and results in the selection of a group of elite athletes does not change the nature of the facility itself. *Id.* at 999. It stated, "We see no justification in reason or in the statute to draw a line beyond which the performance of athletes becomes so excellent that a competition restricted to their level deprives its situs of the character of a public accommodation." *Id.*

¶ 30    The PGA appealed the decision to the United States Supreme Court, and the Court affirmed the judgment. *Martin II*, 532 U.S. at 691. In the Supreme Court, the PGA abandoned its argument that "the competitors' area 'behind the ropes' is not a public accommodation, notwithstanding the status of the rest of the golf course." *Id.* at 677-78. Instead, the PGA reframed the issue by arguing that the competing golfers were not members of the class protected by Title III of the ADA. *Id.* at 678. The Court disagreed, stating:

> "In our view, petitioner's tournaments (whether situated at a 'golf course' or at a 'place of exhibition or entertainment') simultaneously offer at least two 'privileges' to the public—that of watching the golf competition and that of competing in it. Although the latter is more difficult and more expensive to obtain than the former, it is nonetheless a privilege that petitioner makes available to members of the general public. In consideration of the entry fee, any golfer with the requisite letters of recommendation acquires the opportunity to qualify for and compete in petitioner's tours. Additionally,

any golfer who succeeds in the open qualifying rounds for a tournament may play in the event. That petitioner identifies one set of clients or customers that it serves (spectators at tournaments) does not preclude it from having another set (players in tournaments) against whom it may not discriminate. It would be inconsistent with the literal text of the statute as well as its expansive purpose to read Title III's coverage, even given petitioner's suggested limitation, any less broadly." *Id.* at 680.

¶ 31    The reasoning set forth in *Martin I* and *Martin II* is directly applicable to this case. M.U. tried out for, and was accepted as a member of, Team Illinois. She alleges that Team Illinois discriminated against her by restricting her from the portions of a place of public accommodation that were reserved for Team Illinois members. Team Illinois cannot escape liability under section 5-102(A) by claiming that M.U. was not barred from the parts of the facility that were open to the public at large. Like the competitive areas "behind the ropes" on golf courses, the areas of Seven Bridges that are restricted to members of Team Illinois are no less a place of public accommodation than the areas that are open to the general public. See *Martin I*, 204 F.3d at 997-98.

¶ 32    The defendants attempt to distinguish *Martin* by arguing that Team Illinois lacks a "close connection to a specific facility," unlike the PGA Tour and its golf courses. See *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1269-70 (7th Cir. 1993) (holding that the Boy Scouts of America was not subject to Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a(a)-(b) (1988)) because it was a membership organization that was not closely connected to a specific physical facility). The defendants argue that "there is a significant difference between an entity that occupies a facility so comprehensively that it becomes synonymous with the facility, and an entity such as Team Illinois that is just one of many organizations that rents a space during a specified time and then vacates that space to make room for the next renter." We disagree. According to the complaint, Team Illinois leases parts of Seven Bridges, has its office at Seven Bridges, and uses the facility as the primary location for its activities. Thus, the defendants fail to distinguish *Martin* on the basis that Team Illinois lacks a sufficient nexus with a place of public accommodation.

¶ 33    The defendants make several other arguments in opposition to our interpretation of section 5-102(A), but none of these arguments are persuasive. They contend that applying the statute to the facts in this case will have the effect of "reaching into the affairs" of religious, academic, political, charitable, and other private organizations, including their decisions on funding, membership, personnel, and internal disciplinary matters. We disagree. By its terms, section 5-102(A) does not subject *all* activities of an organization to the Act. It is strictly limited to actions that deny a person the full and equal enjoyment of a place of public accommodation.

¶ 34    The defendants next contend that Team Illinois itself is not a place of public accommodation under the Act because places of public accommodation are limited to physical places and do not include member organizations. We need not decide this question because we have already held that the complaint states a cause of action sufficient to survive dismissal under section 2-615 of the Code. While we note that the complaint refers to Team Illinois as a "place of public accommodation" in two places, the gist of the complaint is that Team Illinois denied M.U. the full and equal enjoyment of the facilities, goods, and services of Seven Bridges. See, *e.g.*, *Illinois ex rel. Madigan v. Illinois High School Ass'n*, No. 12 C 3758, 2012 WL 3581174, at *4-6 (N.D. Ill. Aug. 17, 2012) (holding that it was unnecessary to reach the

issue of whether the Illinois High School Association (IHSA) was a place of public accommodation because the complaint sufficiently alleged that the IHSA operated track and swimming facilities to which the plaintiff was denied access). "A motion to dismiss [under section 2-615] does not lie as long as a good cause of action is stated ***." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 488 (1994). The only question before this court is whether the complaint states a cause of action upon which relief may be granted. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). It does. We therefore do not need to determine whether the complaint states a separate cause of action based on an alternate reading of the factual allegations.

¶ 35    The defendants' final contention is that this court should "articulate the legal standards that govern application" of the "private club" exemption in section 5-103(A) of the Act. 775 ILCS 5/5-103(A) (West 2020). Section 5-103(A) states:

> "Nothing in this Article shall apply to:
>
> *** A private club, or other establishment not in fact open to the public, except to the extent that the goods, services, facilities, privileges, advantages, or accommodations of the establishment are made available to the customers or patrons of another establishment that is a place of public accommodation." *Id.*

The private club exemption is a defense to the allegation that a defendant is a place of public accommodation. See *Hardie v. National Collegiate Athletic Ass'n*, No. 13-CV-0346 (RBB), 2013 WL 12072529, at *6 (S.D. Calif. May 30, 2013).

¶ 36    We decline the defendants' request to provide guidance regarding the parameters of the private club exemption. In its motion to dismiss, the defendants alleged that Team Illinois is a private club that is exempt from the Act under section 5-103(A). However, even if this were true, M.U.'s theory of liability is not dependent on finding that Team Illinois is a place of public accommodation. The defendants do not contend that Seven Bridges is a private club. Consequently, any guidance this court might provide on this exception would amount to an advisory opinion. See *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 408 (1990) ("Our jurisdiction is restricted to cases which present an actual controversy, and we decline to issue advisory opinions on moot or abstract questions of law.").

¶ 37                                    CONCLUSION

¶ 38    For the foregoing reasons, we affirm the appellate court's judgment that reversed the circuit court's order dismissing the complaint with prejudice. We remand the cause to the circuit court for further proceedings consistent with this opinion.

¶ 39    Appellate court judgment affirmed.

¶ 40    Circuit court judgment reversed.

¶ 41    Cause remanded.