2016 IL App (1st) 151435

THIRD DIVISION
June 1, 2016

No. 1-15-1435

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| OMID SHARIAT RAZAVI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff -Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| EVA WALKUSKI and ARIEL ZEKELMAN, | ) | |
| | ) | 14 L 7669 |
| Defendants-Appellants, | ) | |
| | ) | |
| (SCHOOL OF THE ART INSTITUTE OF | ) | |
| CHICAGO, | ) | The Honorable |
| | ) | Moira Johnson |
| Defendant). | ) | Judge, presiding. |
| | ) | |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Mason and Justice Fitzgerald Smith concurred in the judgment and opinion.

**OPINION**

¶ 1    This interlocutory appeal arises from a defamation action that plaintiff Omid Shariat Razavi filed against defendants Eva Walkuski and Ariel Zekelman. Pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2014)), defendants filed a combined motion to dismiss which the trial court denied. Thereafter, defendants filed a motion to certify a

question of law pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016). The dispositive issue presented for review is:

¶ 2    "Under Illinois law, does the absolute privilege for reporting crimes to law enforcement apply to a college student's report of on-campus sexual violence to campus security, particularly when federal law encourages college students to report sexual violence to campus security?"

Based on the following, we find that the absolute privilege applies to statements that are made to campus security for the purpose of initiating legal proceedings.

¶ 3                                    BACKGROUND

¶ 4    We recite only those facts necessary to answer the certified question. The plaintiff and defendants were students at the School of the Art Institute (SAIC), a private institute of higher education located in Chicago, Illinois. Defendants met plaintiff in the fall of 2011, when all three were living in an SAIC dormitory. In September 2013, Walkuski reported to the SAIC campus security director that plaintiff had sexually assaulted her on several occasions and was also stalking her. SAIC's campus security director then escorted Walkuski to the Chicago Police Department (CPD) where she filed an incident report pertaining to the sexual assault and stalking. She also obtained a "plenary stalking no contact" order against plaintiff. Zekelman also reported to SAIC Campus Security that plaintiff had sexually assaulted her, but later withdrew her complaint. Thereafter, a disciplinary hearing was held to consider Walkuski's complaint against plaintiff and the SAIC student conduct board found the allegations to be credible. Subsequently, plaintiff was expelled from SAIC.

¶ 5    On July 22, 2014, plaintiff filed a defamation action against defendants and SAIC. In pertinent part, plaintiff alleged separate counts of defamation *per se* and defamation *per quod*

2

against Walkuski for falsely reporting to SAIC campus security that plaintiff had sexually assaulted and stalked her. Plaintiff alleged separate counts of defamation *per se* and defamation *per quod* against Zekelman for falsely reporting to SAIC campus security that defendant sexually assaulted her. In response, defendants filed a combined motion to dismiss contending that their reports to SAIC campus security were absolutely privileged because the reports were made to law enforcement personnel. The circuit court denied defendants' motion, finding that whether the absolute privilege applied to reports of sexual violence made to campus security was a question of first impression in Illinois. Thus, the trial court certified the question at issue pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016).

¶ 6                                   ANALYSIS

¶ 7                                   A. Rule 308

¶ 8      We initially observe that a Rule 308 appeal is limited to answering a certified question of law and is not intended to address the application of the law to the facts of a particular case. *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 133 (2008). Thus, the parties' arguments pertaining to the underlying motion to dismiss are outside the scope of our review and will not be addressed. *Id.* Any answer we provide would be an advisory opinion and the courts of Illinois do not issue advisory opinions to guide future litigation. *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 32. We therefore decline defendants' invitation to use our "inherent power" to now reverse the trial court's ruling on the motion to dismiss in the "interests of judicial economy."

¶ 9      The certified question asks whether campus security should be considered law enforcement for purposes of an alleged victim's report of sexual violence on campus. Before answering the question, we note that the parties have extensively briefed the potential effect of

3

the SAIC student handbook's specific policies regarding the reporting of sexual assault and the administrative ways of handling such reports, but a detailed examination of these factual matters is outside the purview of our limited role here. Plaintiff has also made various arguments regarding statements that were made in the course of the SAIC investigation to personnel who were not employed within the campus security department. Specifically, plaintiff argues that these statements were not privileged, and thus, this appeal will not materially advance litigation. In our view, all of these fact-based arguments are outside the scope of the certified question, but we do note that generally once a privileged statement is made to law enforcement any subsequent restatements made in furtherance of an investigation fall under this privilege. See *Belluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 26 ("[a]n investigation is a continuum and it defies rational thinking to isolate certain portions of the investigation in order to apply different levels of privilege"); *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 404 (2009). ("[d]efamatory statements that would otherwise be actionable will escape liability when the conduct is to further an interest of social importance such as the investigation of an alleged crime"). Based on the record before us, we further find that plaintiff has waived any such consideration by failing to object at the time that the question was certified in the trial court, or in the alternative, file an objection to defendants' Rule 308 petition for leave to appeal. See *Mabry v. Village of Glenwood*, 2015 IL App (1st) 140356, ¶ 15 (it is a well-settled principle that arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal). As a result, we will not consider these arguments.

¶ 10                                     B. Absolute Privilege

¶ 11    For our purposes, the only necessary factual information from the handbook is that victims of sexual assault and/or stalking were encouraged to either report the incident to the local

police *or* campus security. Defendants chose the latter option. Plaintiff acknowledges that absolute privilege would attach to any statements made to local law enforcement, but contends that statements made to campus security should expose defendants to liability for defamation. We disagree and hold that absolute privilege extends to statements made by alleged campus crime victims to campus security.

¶ 12    Privilege is an affirmative defense that may be raised in a motion for involuntary dismissal of a defamation action. *Hartlep v. Torres*, 324 Ill. App. 3d 817, 819 (2001). Accordingly, statements are absolutely privileged when they are (1) made to law enforcement officials; (2) for the purpose of instituting legal proceedings. *Vincent v. Williams*, 279 Ill. App. 3d 1, 7 (1996). Where absolute privilege is granted, no cause of action for defamation lies against the person making the statement even if it is made with malice. *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 71. Whether a defamatory statement is privileged is a question of law which we review *de novo*. *Zych v. Tucker*, 363 Ill. App. 3d 831, 834 (2006).

¶ 13    Although there is not a reported Illinois case that has addressed this specific factual scenario, we believe that the underlying rationale for the privilege as well as the public policy of helping prevent sexual assault on college campuses warrants treating campus security as law enforcement.[1] Illinois common law has a long policy history of affording absolute privilege to individuals who report crimes to further public service and administer justice. See *Young v. Lindstrom*, 115 Ill. App. 239, 245-46 (1904) ("[a]bsolute privilege is confined to cases where the public service, or due administration of justice, requires that a party speak his mind freely, and no action can be maintained therefor even though the words be false or maliciously spoken"). One need not make a dramatic leap in logic to recognize that a campus rape victim might first

---

[1] In launching his "It's On Us" Campaign to End Sexual Assault on Campus, President Obama noted that "an estimated one in five women has been sexually assaulted during her college years" and "of those assaults, only 12 percent are reported, and of those reported assaults, only a fraction of the offenders are punished."

report the incident to on-campus security, the most immediately accessible "law enforcement," who will then proceed to involve the local police if necessary. In addition, the record also suggests that SAIC campus security held themselves out as law enforcement to the school's student body. For instance, like police officers, on-campus security departments wear badges and uniforms, patrol campus 24 hours a day, prevent crimes from occurring, respond to crimes, take statements, and conduct their own investigations. See *People v. Gabriel*, 2014 IL App (2d) 130507, ¶ 4 (an on-duty college police officer stopped the defendant for a registration violation upon exiting a college parking garage and arrested him when a license check revealed he was in violation of an order of protection); *People v. Willis*, 170 Ill. App. 3d 638, 639 (1988) (a college public safety officer was assaulted, by defendant when he responded to an on campus incident between the defendant and several students); *People v. McDowell*, 121 Ill. App. 3d 491, 493 (1984) (after being sexually assaulted a female victim identified her attacker standing in a class registration line and informed the university's security police who then arrested the defendant in a classroom); *People v. Barber*, 70 Ill. App. 3d 540, 543 (1979) (campus police patrolled the campus, gathered a description of the defendant rapist from the victim, broadcast the description over the radio and later arrested the defendant). Thus, the purpose of a campus security department is to protect and provide assistance to its students, as well as uphold the law on its campus. It stands to reason that a report of sexual violence made to an on-campus university security officer should be absolutely privileged to not only safeguard students but to the further public policy of limiting sexual violence on college campuses.

¶ 14    Further, a contrary policy would surely have a chilling effect of deterring victims from reporting a crime of sexual violence for fear that retaliatory legal action may be taken against them. Moreover, it is manifestly counterintuitive to penalize a victim for reporting an alleged

incident of on-campus sexual violence to her security department. We cannot fathom any public policy that would be served by adopting plaintiff's argument that he ought to be able to sue these alleged crime victims merely because they opted to contact campus security.

¶ 15    We also find support in a case in which the Indiana Supreme Court extended an absolute privilege to two students' reports of sexual harassment to their university. *Hartman v. Keri*, 883 N.E.2d 774 (Ind. 2008). In *Hartman*, two students filed complaints alleging their professor had sexually harassed them pursuant to their university's anti-harassment policy. *Id.* at 775. Upon receipt of the complaints, the university conducted an investigation, similar to the one conducted by SAIC, and ultimately removed the professor from his position. The professor then sued the students alleging libel and slander. The Indiana Supreme Court acknowledged that Indiana law afforded only a qualified privilege to statements to law enforcement. *Id.* at 776. In recognition of federal and state policies addressing sexual assault on campuses, however, the court held that student reports of sexual assault and harassment are protected by an absolute privilege. *Id.* at 779. The *Hartman* court reasoned that students should be encouraged to come forward and report incidents and "[p]rotecting their complaints with anything less than an absolute privilege could chill some legitimate complaints for fear of retaliatory litigation." *Id.* at 778. The court further noted the university had an "interest in assuring a proper educational environment" and false reporting is deterred by the university's policy which academically disciplines a student for false reporting. *Id.*; *Cf. Mauvais-Jarvis*, 2013 IL App (1st) 120070, ¶ 88 (this court declined to extend absolute privilege to an associate professor who brought a defamation action against Northwestern University, distinguishing *Hartman* by noting that "the university's process for reporting and investigating allegations of sexual misconduct, significantly differ[ed] from Northwestern's research and misconduct proceedings" and "there is no equivalent punishment for

a researcher who falsely reports scientific misconduct").  We further observe that contrary to

plaintiff's assertion whether or not a university is private or public is irrelevant.  Public policy

dictates that victims who report sexual crimes should be treated synonymously and we cannot

expect a distressed private university student to first consider the legal intricacies based on her

type of university to evaluate the best course of action before getting assistance.[2]

¶ 16    Next, we consider the second requirement, that the victim made the report for the purpose

of initiating legal proceedings.  Whether any given proceeding is quasijudicial depends upon the

nature of the proceeding and the powers and duties of the body conducting the proceeding.  *Zych*,

363 Ill. App. 3d at 835.  Six powers have been identified which differentiate a quasijudicial body

from a body performing merely an administrative function: (1) the power to exercise judgment

and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the

power to make binding orders and judgments; (4) the power to affect the personal or property

rights of private persons; (5) the power to examine witnesses, to compel the attendance of

witnesses, and to hear the litigation of issues on a hearing; and (6) the power to enforce decisions

or impose penalties.  *Starnes v. International Harvester Co.*, 141 Ill. App. 3d 652, 655 (1986).

With that said, the privilege does not require university proceedings themselves to constitute a

legal proceeding; rather, even the act of reporting to a police officer does not itself constitute a

legal proceeding.  Instead, it's the State's Attorney, who has the absolute discretion to decide

---

[2] We note that the Illinois legislature recently enacted the Preventing Sexual Violence in Higher Education Act (Act) (Pub. Act 99-426 (eff. Aug. 21, 2015), which requires public universities, public community colleges, and independent, not-for-profit or for-profit higher education institutions to adopt a comprehensive policy to address student allegations of sexual violence, domestic violence, dating violence, and stalking.  In addition, it requires each higher education institution, upon being notified of a violation of the comprehensive policy, to provide the student survivor with a concise notification of the survivor's rights and options, including "the survivor's right to request and receive assistance from campus authorities in notifying law enforcement" and "request interim protective measures and accommodations."  (Pub. Act 99-426, § 15 (Aug. 21, 2015).  This may include: "changes to academic, living, dining, working, and transportation situations, obtaining and enforcing a campus-issued order of protection or no contact order."  Pub. Act 99-426, § 15 (Aug. 21, 2015).  All of which requires campus security knowing the identity of the perpetrator to enforce.  Further, each higher education institution must adopt one procedure to resolve complaints of student violations.

whether to file charges in any particular case. *Reichert v. Board of Fire & Police Commissioners*, 388 Ill. App. 3d 834, 849 (2009). In the context of reports to traditional law enforcement, courts presume that statements are made for the purpose of constituting legal proceedings, notwithstanding a defamation plaintiff's claim that the statements were false, maliciously motivated or made for a purpose unrelated to the institution of legal proceedings. See *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d at 404-06 (collecting cases and refusing to modify Illinois' absolute privilege to exempt from its scope reports made to law enforcement with an ulterior motive). We see no reason to depart from this rationale and require courts to make a determination of fact as to the reporter's subjective intent when reports of sexual violence are first made to campus security. Any other result would effectively transform an absolute privilege into one quality by the victim's intent, thus potentially exposing victims to the threat of defamation claims. Accordingly, we answer the certified question by stating that statements to campus security are absolutely privileged. Upon remand, the trial court shall consider this answer when ruling on any dispositive motion.

¶ 17                                         CONCLUSION

¶ 18     Certified question answered; cause remanded.