2024 IL App (2d) 220177-U
No. 2-22-0177
Order filed August 1, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THOMAS LITTLEDALE, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-L-380 |
| | ) | |
| LAURIEL J. SIMA, | ) | Honorable |
| | ) | Mitchell L. Hoffman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: Plaintiff abandoned defamation counts contained in his amended complaint when he filed a second amended complaint that did not incorporate by reference or even refer to the allegations in the amended complaint and thereby forfeited review of any alleged errors in the dismissal of these counts, the trial court properly dismissed plaintiff's claims of intentional infliction of emotional distress because he failed to show that defendant's statements were extreme and outrageous, and properly directed the verdict in defendant's favor on claims of malicious prosecution where plaintiff failed to prove that the proceedings terminated in his favor; trial court is affirmed.

¶ 2   Plaintiff, Thomas Littledale, appeals from rulings of the trial court in his litigation with defendant, Lauriel J. Sima. For the reasons that follow, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4      At one time the parties had a romantic relationship and lived together in defendant's Lincolnshire home. But when their romantic relationship ended, defendant asked plaintiff to move out of her home in January and February 2017. On May 3, 2017, defendant filed an eviction proceeding in the Circuit Court of Lake County. On May 18, 2017, the parties entered into an agreed order requiring plaintiff to move out of defendant's home by May 26, 2017.

¶ 5      On May 19, 2017, defendant called the Lincolnshire Police Department to report a battery. Officer Bethany Brown came to defendant's home to investigate. During the investigation, Officer Brown reported that defendant told her that as plaintiff was moving his belongings from her home to his car, he told her to get out of his way, placed both hands on her chest, pushed her to the ground, and left the area in his car. Officer Brown advised defendant how to obtain an order of protection. Officer Brown's report also stated that the following day, plaintiff and his attorney, Daniel Madigan, came to the police station. Plaintiff was interviewed by Brown and another officer in Madigan's presence. After plaintiff was read his Miranda rights and waived them, Officer Brown asked plaintiff if he pushed defendant, and plaintiff nodded his head up and down and said that he did not speak with defendant that morning. Officer Brown told plaintiff that he was being deceitful, and plaintiff then said, "No." At this point attorney Madigan ended the interview.

¶ 6      Plaintiff was arrested and charged with misdemeanor battery (case no. 17 CM 1401) (hereinafter, "criminal case"). Thereafter the case was continued for over five months. On November 3, 2017, the State argued its motion to continue the trial that had been set for November 13, 2017. The State requested a continuance because defendant was not available on the trial date due to the fact that that she would be out of the country. Therefore, the State argued, it would be

severely prejudiced by defendant's absence. The trial court denied the State's motion to continue. The trial court granted the State leave to *nolle prosequi* the battery charge against plaintiff.

¶ 7     Also, on May 19, 2017, defendant obtained an emergency order of protection against plaintiff (case no.17 OP 897) (hereinafter, "civil case"). On the order, no hearing date was filled in for a hearing for a plenary/interim order of protection. On June 9, 2017, the expiration date of the emergency order of protection, plaintiff and his counsel appeared in court without defendant present. The court dismissed the order of protection stating, defendant "has failed to appear for hearing, and the cause is dismissed for want of prosecution."

¶ 8     In May 2018 plaintiff filed a four-count complaint against defendant alleging defamation in counts I and II and intentional infliction of emotional distress in counts III and IV. After defendant moved to dismiss plaintiff's complaint, plaintiff filed a ten-count amended complaint. Defendant moved to dismiss plaintiff's amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 2-615, 2-619 (West 2018)).

¶ 9     On November 1, 2018, the trial court denied defendant's motion to dismiss as to count I (malicious prosecution of the criminal case) and count II (malicious prosecution of the civil case). The court dismissed with prejudice count III (defamation related to statements defendant made to the police) and count IV (defamation related to statements defendant made to the court in filing for an emergency order of protection), because it determined that defendant's statements were absolutely privileged. The court dismissed without prejudice count V (defamation that related to statements defendant made in public places and/or to third parties), indicating that plaintiff must identify the specific statements made and to whom the statements were made. Lastly, the court dismissed without prejudice count VI (intentional infliction of emotional distress arising from defendant's malicious prosecution of the criminal case), count VII (intentional infliction of

emotional distress arising from defendant's malicious prosecution of the civil case), count VIII (intentional infliction of emotional distress arising from defendant's defamatory statements made to the police), count IX (intentional infliction of emotional distress arising from defendant's defamatory statements made to the court) and count X (intentional infliction of emotional distress arising from defendant's defamatory statements made in public places and/or to third parties).

¶ 10    In February 2019, plaintiff filed an eight-count second amended complaint. Count I alleged defendant's malicious prosecution of the criminal case. Count II alleged defendant's malicious prosecution of the civil case (emergency order of protection). Count III alleged defamation in that defendant repeated defamatory statements in public places and/or to third parties. Count IV alleged intentional infliction of emotional distress resulting from defendant's malicious prosecution of the criminal case. Count V alleged intentional infliction of emotional distress resulting from defendant's malicious prosecution of the civil case (emergency order of protection). Count VI alleged intentional infliction of emotional distress resulting from defamatory statements defendant made to the Lincolnshire Police Department. Count VII alleged intentional infliction of emotional distress resulting from defamatory statements defendant made to the circuit court of Lake County in her petition for an emergency order of protection. Count VIII alleged intentional infliction of emotional distress resulting from defamatory statements defendant made in public places and/or to third parties. Plaintiff sought punitive damages.

¶ 11    Defendant filed a combined motion to dismiss counts III-VIII pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2018)). Defendant's motion argued that plaintiff's request for punitive damages should be stricken.

¶ 12    In plaintiff's response he argued that the allegations contained in count III constituted defamation *per se* and, therefore, damages and injury to his reputation was presumed.

¶ 13    On May 23, 2019, the trial court granted defendant's motion and dismissed counts III-VIII, under section 2-615. The court also ruled that "the alleged false statements made to the Court and Police for the purposes of usurping a valid order of the Court in a separate proceeding [were] not extreme and outrageous." The only counts that remained were those alleging malicious prosecution—counts I and II. The trial court deferred judgment on defendant's request to strike plaintiff's punitive damages prayer for relief.

¶ 14    Also on May 23, 2019, the trial court ordered plaintiff to disclose Rule 213(f) information by November 1,2019, and that all discovery be completed by December 20, 2019.

¶ 15    On June 20, 2019, defendant filed her answer to plaintiff's malicious prosecution counts (I and II) of his second amended complaint. The relevant allegations and answers follow.

¶ 16    In the "Facts common to all Counts" section of his second amended complaint plaintiff alleged 1) "the criminal charges/case" against him was "dismissed in [his] favor," and 2) "the Order of Protection *** was dismissed [in his favor.]" In answer to these allegations defendant stated she admitted the allegation.

¶ 17    In count I, paragraph 37, plaintiff alleged "The criminal case subject of this matter was terminated in favor of [him]." In count II, paragraph 37, plaintiff alleged, "The Civil Case/Petition for an Emergency Order of Protection was terminated in favor of [him]." Defendant answered both allegations by stating, "Defendant neither admits not denies the allegations contained in Paragraph 37 as they call for legal conclusions."

¶ 18    On June 23, 2020, defendant filed a motion to disqualify plaintiff's attorney, Daniel Madigan, on the basis that he was a witness to the police interrogation of plaintiff. Initially, attorney Madigan objected to defendant's motion, but then he withdrew his objection and

voluntarily agreed not to serve as plaintiff's counsel. On September 15, 2020, the trial court entered an order disqualifying attorney Madigan as plaintiff's trial counsel.

¶ 19 On October 20, 2020, the trial court entered an order stating, "Discovery is reopened for the limited purpose of allowing [d]efendant to depose Attorney Daniel Madigan within 30 days, and leave is granted to both parties to amend their 213(f)s for the limited purpose of adding Daniel Madigan as a witness if they so choose." The court set February 1, 2021, as the trial date.

¶ 20 On November 19, 2020, defendant deposed Madigan. Plaintiff provided defendant with his Amended 213(f) disclosures that included Madigan as an independent expert witness.

¶ 21 In December 2020 defendant filed a motion for summary judgment regarding the remaining counts alleging malicious prosecution. Plaintiff's response argued that he had already met his burden regarding the element of favorable termination because defendant admitted in her answer that both the criminal civil actions at issue were terminated in plaintiff's favor. In February 2021 the trial court denied defendant's motion for summary judgment.

¶ 22 On April 27, 2021, plaintiff filed a motion *in limine* and submitted proposed jury instructions arguing that defendant's answers to his allegations that the proceedings were terminated in his favor constituted judicial admissions. Plaintiff asserted that he was relieved from his burden of proving the requisite element of malicious prosecution that the proceedings terminated in his favor. He sought to bar testimony or evidence from defendant that would either negate or refute that both the criminal and civil actions were terminated in plaintiff's favor.

¶ 23 The same day, defendant filed a motion for leave to file an amended answer to plaintiff's second amended complaint pursuant to section 616(a) and (c) of the Code (735 ILCS 5/616(a),(c) (West 2020)) and attached her amended answer to plaintiff's second amended complaint. Defendant argued, in part, that when looking at the entirety of her answer, it was obvious that "she

did not intend to admit an ultimate legal conclusion in the case and dispense [with plaintiff's] need to prove all the elements of his claims." Defendant asked the court to "amend her Answer to clarify her responses" to plaintiff's allegations to "correct the mistaken inference[s]" plaintiff had drawn from her previous answer.

¶ 24 On April 30, 2021, the trial court granted plaintiff's motion to continue and changed the trial date from May 3 to July 26, 2021. On May 4, 2021, the trial court struck the July 26, 2021, trial date and set a new trial date on July 28, 2021.

¶ 25 On May 21, 2021, plaintiff responded to defendant's motion for leave to file an amended answer. Plaintiff argued that defendant's motion should be denied because he would be prejudiced as she filed her motion "on the eve of trial," it would likely significantly alter his strategy, and it would require him to engage in additional discovery. Plaintiff also alleged that defendant was disingenuous when she contended that the answers at issue were a mistake.

¶ 26 On June 15, 2021, the trial court granted defendant's motion for leave to file an amended answer to plaintiff's second amended complaint and granted defendant leave to file her amended answer, *instanter*. The court reasoned, "the paragraphs at issue allege legal conclusions, not facts, that the difference in the way Defendant previously answered the relevant allegations shows inadvertence, and there is no prejudice to Plaintiff." The court denied plaintiff's motion to bar testimony from defendant refuting that both the criminal and civil actions were terminated in plaintiff's favor. Defendant filed her amended answer on June 25, 2021. Her amended answer was identical to the one attached to her motion for leave to file an amended answer.

¶ 27 On July 9, 2021, plaintiff moved to strike defendant's amended answer arguing that she failed to file it *instanter* and failed to seek an extension of time pursuant to Illinois Supreme Court

Rule 183 (eff. Feb. 16, 2011). The trial court denied plaintiff's motion and found that defendant's amended answer was timely filed.

¶ 28    On July 22, 2021, defendant filed a motion *in limine* to bar attorney Madigan from testifying as an expert. On July 26, 2021, the trial court granted defendant's motion finding that "[h]e was not properly disclosed as an expert, and such testimony would invade the province of the trier of fact." The court also granted defendant's motion to continue the trial due to the unavailability of a witness. On September 8, 2021, the trial court set the trial to begin on November 15, 2021.

¶ 29    On November 15 and 16, 2021, a jury trial was held on counts I and II alleging malicious prosecution of the criminal and civil cases, respectively. Plaintiff presented four witnesses (attorney Daniel Madigan, Elizabeth Madigan (Daniel's ex-wife), Rachel Black, and plaintiff). At the conclusion of plaintiff's case defendant moved for a directed verdict. The trial court granted defendant's motion, finding that plaintiff failed to meet his burden to prove that the underlying cases were terminated in his favor, one of the elements of malicious prosecution.

¶ 30    Plaintiff filed a motion to reconsider which the trial court denied. This timely appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32    Plaintiff argues that the trial court erred when it dismissed with prejudice counts III and IV of his amended complaint alleging defamation in the statements defendant made to the police and the court, respectively. Defendant argues that the trial court properly determined that her statements were absolutely privileged, and, therefore, the court did not err in dismissing these counts pursuant to section 2-619(a)(9) of the Code. As we explain, plaintiff has forfeited review of the trial court's dismissal of counts III and IV of his amended complaint.

¶ 33    In *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153 (1983), the supreme court set forth the circumstances under which a party who files an amended complaint forfeits any objection to the trial court's ruling on any former complaints, or certain counts therein. The court explained that " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " *Id.* at 154. (quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963)). There are three methods by which a plaintiff may avoid the consequences of the *Foxcroft* rule, the plaintiff may, (1) stand on the dismissed pleading and file an appeal, (2) file an amended complaint realleging, incorporating by reference, or referring to the claims set forth in the prior complaint, or (3) perfect an appeal from an order dismissing fewer than all of the counts of his complaint prior to filing an amended pleading that neither refers to nor adopts the dismissed counts. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 36.

¶ 34    Here, plaintiff did not pursue any of these exceptions to the *Foxcroft* rule. Instead, he filed a second amended complaint that did not refer to or adopt counts III and IV of the prior pleading. Additionally, plaintiff did not appeal from the dismissal of counts III and IV prior to filing an amended pleading that neither refers to nor adopts the dismissed counts. Rather, plaintiff appealed the order dismissing counts III and IV of his amended complaint after judgment entered on the second amended complaint. Given these circumstances, plaintiff has forfeited his challenge to the dismissal of counts III and IV of the amended complaint. See *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 27-28 (2003) (holding, *sua sponte*, that, pursuant to the *Foxcroft* rule, the plaintiffs forfeited their claim where they failed to reallege it in an amended pleading).

¶ 35    Forfeiture notwithstanding, we would affirm the dismissal of counts III and IV of the amended complaint. Defendant moved to dismiss counts III and IV of the amended complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2020)).

¶ 36                              A. Counts Dismissed

¶ 37    A motion under section 2-619(a)(9) admits the legal sufficiency of the plaintiff's claim but asserts an affirmative matter outside of the pleading that defeats the claim. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). An "affirmative matter" in a section 2-619(a)(9) motion " 'refers to a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact.' " *Jackson v. Kane County*, 2021 IL App (2d) 210153, ¶ 10 (quoting *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16). Absolute privilege in a defamation action is an affirmative matter properly raised in a section 2-619(a)(9) motion to dismiss. *Golden v. Mullen*, 295 Ill. App. 3d 865, 869 (1997). The existence of an absolute privilege warrants the dismissal of a defamation action. *Razavi v. School of the Art Institute*, 2018 IL App (1st) 171409, ¶ 18. Our review of a ruling on a motion to dismiss under section 2-619 is *de novo*. *Id.*

¶ 38              1. Defamation—Amended Complaint (Counts III & IV)

¶ 39    To establish defamation, the plaintiff must show the defendant: (1) made a false statement about the plaintiff; (2) made an unprivileged publication of that statement to a third party; and (3) the defendant damaged the plaintiff by publishing the statement. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). Defamatory statements are not actionable if they are protected by an absolute privilege. *Razavi*, 2018 IL App (1st) 171409, ¶ 20.

¶ 40    Defamatory statements that would otherwise be actionable will escape liability when the conduct is to further an interest of social importance such as the investigation of an alleged crime.

*Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 404 (2009). Therefore, statements made to law enforcement officials for the purpose of instituting legal proceedings are granted absolute privilege. *Id.* When absolute privilege attaches, no action for defamation lies even where malice is alleged. *Id.* Here, the basis of plaintiff's defamation claim in count III of his amended complaint was defendant's statement to the police that plaintiff pushed her. Because defendant's statement was made to a police officer on the same day she initiated an emergency order of protection against plaintiff, her statement is absolutely privileged. Therefore, the trial court properly dismissed with prejudice count III of plaintiff's amended complaint.

¶ 41    Further, it is well-established in Illinois that "anything said or written in a legal proceeding, including pleadings, is protected by an absolute privilege against defamation actions, subject only to the qualification that the words be relevant or pertinent to the matters in controversy." *Defend v. Lascelles*, 149 Ill. App. 3d 630, 633-34 (1986) (citing cases). Absolute privilege also extends to statements made to law enforcement officers for the purpose of instituting legal proceedings. *Razavi*, 2016 IL App (1st) 151435, ¶ 12. Absolute privilege is afforded to those who report crimes because it furthers public service and the administration of justice. *Razavi*, 2016 IL App (1st) 151435, ¶ 13. The relevancy or pertinency requirement is not strictly applied; rather, the terms are liberally construed, and doubts are resolved in favor of relevancy or pertinency. *Defend*, 149 Ill. App. 3d at 634. The privilege embraces both judicial and quasi-judicial proceedings. *Layne v. Builders Plumbing Supply Co., Inc.*, 210 Ill. App. 3d 966, 969 (1991).

¶ 42    Here, the basis for plaintiff's defamation claim in count IV of his amended complaint was defendant's statement that plaintiff pushed her. Defendant's statement was made in her emergency order of protection filing in the circuit court of Lake County. The document was relevant and pertinent to the matters in controversy. Defendant's statement plainly met the criteria for absolute

privilege, and accordingly, count IV of plaintiff's amended complaint alleging defamation was properly dismissed pursuant to section 2-619(a)(9) of the Code.

¶ 43    Nevertheless, plaintiff argues that the trial court erred by dismissing counts III and IV of his amended complaint because defendant waived or lost her privilege when she made the defamatory statements in public places and to third parties. Plaintiff cites *Gardner v. Senior Living Systems, Inc.*, 314 Ill. App. 3d 114 (2000), to support his argument.

¶ 44    In *Gardner*, the appellate court held that the plaintiff, a former employee, sufficiently alleged facts to state claims for defamation against her former employer, manager, and the vice president of the company. *Id.* at 120, 121. The plaintiff had alleged that, after she resigned, her manager and the vice president sent separate defamatory letters to customers. The plaintiff attached the letters to her complaint. The manager's letters stated that the plaintiff's "actions are at a minimum unethical and because she left with [our company's] software, we believe illegal." *Id.* at 119. The vice president's letter stated that the plaintiff engaged in theft of trade secrets and that "[a] law suit will be filed shortly." *Id.* at 120. The defendant argued the statements contained in the vice president's letter were protected by absolute privilege because the subject matter related to a contemplated judicial proceeding. *Id.* at 122. The court held that privilege did not apply to the "defamatory statement made preliminary to contemplated litigation and made to a private nonjudicial *** third party." *Id.* The court explained that the privilege rested on the idea that "conduct that otherwise would be actionable escapes liability because the defendant acted to further some interest of social importance." (Internal quotation marks omitted.) *Id.*

¶ 45    Here, in contrast to the defendant in *Gardner*, defendant made her statements to further an interest of social importance—a judicial proceeding—and to report a crime. Further, unlike the

plaintiff in *Gardner*, plaintiff in this case did not specify what statements defendant made or to whom she made them. Therefore, *Gardner* is distinguishable and is not controlling.

¶ 46                    2. Defamation—Second-Amended Complaint (Count III)

¶ 47    Plaintiff also argues that the trial court erred when it dismissed count III of his second amended complaint alleging defamation *per se* arising from the statements defendant made in public and to third parties. Defendant argues that dismissal was proper pursuant to section 2-615 of the Code because plaintiff failed to specify what statements defendants made or to whom she made them. We agree with defendant.

¶ 48    A motion filed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) challenges the legal sufficiency of a complaint based on defects apparent on the face of the complaint. *M.U. By & Through Kelly U. v. Team Illinois Hockey Club, Inc*, 2024 IL 128935, ¶ 15. In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn therefrom. *Id.* In addition, we construe the allegations of the complaint in the light most favorable to the plaintiff. *Id.* A court should not dismiss a cause of action pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 11. We review *de novo* the dismissal of a cause of action pursuant to section 2-615. *Id.*

¶ 49    As stated in plaintiff's response to defendant's motion to dismiss, he alleged in count III of his second amended complaint defamation *per se*, arguing that defendant's statements imputed "the commission of a criminal offense." A statement is defamatory *per se* if its harm is obvious and facially apparent. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). There are five categories of per se defamatory statements: (1) words that impute the commission of a crime; (2) words that

impute an infection of a loathsome communicable disease; (3) words that impute that a person is unable to perform, or lacks integrity in performing, his employment duties; (4) words that impute that a person lacks ability, or otherwise prejudices that person, in his profession; and (5) words that impute that a person had engaged in adultery or fornication. *Id.* If a plaintiff claims that a statement constitutes defamation *per se*, the plaintiff need not plead or prove actual damages, because the statement is considered so obviously and materially harmful that injury to the plaintiff's reputation may be presumed. *Green*, 234 Ill. 2d at 495.

¶ 50    Here, plaintiff alleged in count III of his second amended complaint that, "[u]pon information, knowledge, and/or belief," defendant had on multiple occasions continued to repeat the alleged defamatory statements (that plaintiff pushed/attacked her) in public places and to third parties; namely, at "Jameson's Original Charhouse/Bar, located in Arlington Heights, to employees of the establishment, including, but not limited to Bonnie (last name unknown) and Frank (last name unknown), *** and to the patrons of the establishment," and "to fellow members of her Corvette Club and other friends, including, but not limited to Lou (last name unknown) and Jerry (last name unknown)."

¶ 51    Plaintiff argues that these allegation state a "continuing cause of action for defamation against" defendant. Defendant argues that the trial court properly dismissed this count because it lacked specificity.

¶ 52    Plaintiff's defamation *per se* allegations are based on what he claims are false statements that he pushed or attacked defendant, whom he lived with at the time. The allegedly defamatory *per se* statements impute the commission of a crime. As such he did not need to plead facts that alleged actual damages. See *Green*, 234 Ill. 2d at 495. However, "a defamation *per se* claim must be pled with a heightened level of precision and particularity." *Green*, 234 Ill. 2d at 495. This

"heightened level of precision" required plaintiff to "plead the relevant facts on something more than his mere 'belief.'" *Id.* Our supreme court explained:

> "This does not mean that the facts constituting defamation *per se* may never be pled on information and belief. On the contrary, we recognize that pleading on information and belief will often be necessary, especially in cases such as this where the allegedly defamatory statements were made outside the plaintiff's presence and therefore without the plaintiff's direct knowledge. We are holding only that, when the relevant facts are so pled, the factual basis informing the plaintiff's belief must also be pled. Unlike the facts relating to the allegedly defamatory statements themselves, the facts informing plaintiff's belief will always be within plaintiff's direct knowledge and therefore fully capable of being pled with the requisite precision and particularity." *Green*, 234 Ill. 2d at 495-96.

¶ 53 Here, plaintiff did not allege that defendant in fact stated that he "pushed/attacked her." Rather, plaintiff alleged only that he was informed, knew, and/or believed that defendant made such statements, and he did so in a "factual vacuum." *Id.* at 496. Plaintiff failed to allege how he came to be so informed or what facts caused him to believe or know that defendant made the statements. Did someone who was present at Jameson's Charhouse or the Corvette Club tell plaintiff that defendant made these statements? Did plaintiff read something that suggested that defendant made such statements? Or did plaintiff just happen to *believe* defendant made these statements without any objective basis? Count III of plaintiff's second amended complaint simply does not say, and for this reason it is facially deficient. *Id.* Therefore, we conclude that the trial court properly granted defendant's section 2-615 motion to dismiss count III of plaintiff's second amended complaint.

¶ 54                          3. Intention Infliction of Emotion Distress

¶ 55    Plaintiff maintains that the trial court erred by dismissing his claims for intentional infliction of emotional distress as set forth in counts IV-VIII of his second amended complaint. It is plaintiff's position that the allegations were sufficient to plead a cause of action based on this theory. Defendant argues that the trial court properly dismissed plaintiff's claims because he failed to show that defendant's statements were extreme and outrageous pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (2020)).

¶ 56    To state a cause of action for intentional infliction of emotional distress a plaintiff must allege that (1) the conduct involved was truly extreme and outrageous, (2) the defendant either intended her conduct to inflict severe emotional distress or knew that there was at least a high probability that her conduct would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress. *Schweihs v. Chase Home Financial, LLC*, 2016 IL 120041, ¶ 50.

¶ 57    In counts IV-VIII of his second amended complaint plaintiff essentially alleged that defendant made statements to the police, the Circuit Court of Lake County, and to third parties that plaintiff "pushed/attacked" defendant when she knew or should have known that making such false statements would result in plaintiff suffering severe and extreme emotional distress.

¶ 58    While it is not unlikely that defendant's alleged conduct created some distress and embarrassment for plaintiff and may have subjected plaintiff to some indignities, we do not believe the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," as required in stating a cause of action for intentional infliction of emotional distress. *Layne v. Builders Plumbing Supply Co., Inc.*, 210 Ill. App. 3d 966, 973 (1991). Recovery under this theory does not extend to conduct involving mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Schweihs*, 2016 IL 120041, ¶ 51. Nor does it even extend to conduct characterized by malice or a degree of aggravation which would entitle the

plaintiff to punitive damages for another tort. *Id.* "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46, comment d, at 73 (1965).) The distress inflicted must be so severe that no reasonable man could be expected to endure it. *Id.* Here, the conduct alleged by plaintiff does not meet that requirement.

¶ 59     When presented with similar circumstances, we came to the same conclusion. See *Layne*, 210 Ill. App. 3d at 973 (holding that the defendant's allegedly false complaint to the police that the plaintiff had harassed, assaulted, and verbally threatened a co-worker did not constitute outrageous conduct required to state a cause of action for intentional infliction of emotional distress). See also, *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 39 (1997) (holding that a false complaint to the police of criminal trespass to a vehicle that resulted in the plaintiff's arrest was not extreme and outrageous conduct); *Buechele v. St. Mary's Hospital Decatur*, 156 Ill. App. 3d 637, 642 (1987) (holding that even if a report stating that the plaintiff/nurse had stolen drugs and controlled substances was filed with bad faith and malice, it was "not of such an extreme and outrageous nature as to constitute a basis for recovery under the theory of intentional infliction of emotional distress").

¶ 60     The conduct alleged here is no more outrageous than the conduct alleged in the cases described above. Assuming that defendant did file a police report and petition for an emergency order of protection based on claims she knew to be false, as we must, this does not rise to the level of extreme and outrageous behavior required to sustain an intentional infliction of emotional distress claim. The police report and petition, filed at approximately the same time, are essentially the same incident, and contain substantially similar allegations to those raised in *Layne*. Although

defendant's alleged conduct may have caused plaintiff some distress and embarrassment, it was not extreme and outrageous enough to satisfy the requirements of an intentional infliction of emotional distress claim under Illinois law. Therefore, the trial court properly dismissed Counts IV-VIII of plaintiff's second amended complaint alleging intentional infliction of emotional distress.

¶ 61                    B. Malicious Prosecution (Counts I and II)

¶ 62    We now address plaintiff's arguments regarding the remaining counts that alleged malicious prosecution. Plaintiff argues that (1) at trial he should not have had to prove that the proceedings were terminated in his favor because defendant judicially admitted this element of malicious prosecution in her answer, (2) the trial court erred when it allowed defendant to amend her answer, (3) the trial court erred when it did not strike defendant's answer, (4) the trial court erred when it denied plaintiff's motion *in limine*, (5) the trial court erred when it barred his counsel as an expert witness, and (6) the trial court erred when it granted defendant's motion for a directed verdict. We discuss and reject each argument in turn.

¶ 63    To begin, we set forth the elements of malicious prosecution. The plaintiff in a malicious prosecution action must prove (1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant, (2) the termination of the proceeding in favor of the plaintiff, (3) the absence of probable cause for such proceeding, (4) malice, and (5) damages. *Beaman v. Freesmeyer*, 2021 IL 125616, ¶ 74. "The absence of any of these elements will preclude a plaintiff from recovering on a claim for malicious prosecution." *Id.*

¶ 64                    1. Defendant's Answer—Judicial Admissions

¶ 65    Plaintiff argues that he should not have been required to prove one of the elements of malicious prosecution at trial, that the proceedings were terminated in his favor. He maintains that

defendant's answers to his second amended complaint contained judicial admissions regarding this element.

¶ 66    Judicial admissions are defined as "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 37 (quoting *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998)). Judicial admissions are conclusively binding on a party and, therefore, may not be contradicted in a motion for summary judgment or at trial. *Id.* However, a party is not bound by admissions regarding conclusions of law. *Sperl v. Henry*, 2018 IL 123132, ¶ 36. Even though defendant admitted in the "Facts Common to all Counts" section of plaintiff's complaint that the proceedings dismissed in plaintiff's favor, defendant's answers were not assertions of concrete facts but were conclusions of law. *Id.* Further, defendant's statements were not clear or unequivocal. Rather, defendant provided different answers in the specific count sections. Defendant answered that she neither admitted nor denied that the proceedings terminated in plaintiff's favor because the allegations called for a legal conclusion. Therefore, defendant did not judicially admit that the proceedings terminated in plaintiff's favor.

¶ 67                                      2. Defendant's Answer

¶ 68    Plaintiff argues that the trial court erred when it allowed defendant to amend her answer and did not strike her answer. We reject these arguments.

¶ 69    In determining whether to allow an amendment to the pleadings, the trial court considers the following factors: (1) whether the proposed amendment would cure a defect in the pleadings; (2) whether the proposed amendment would prejudice or surprise other parties; (3) whether the proposed amendment is timely; and (4) whether there were previous opportunities to amend the pleading. *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 45.

¶ 70    In opposition to defendant's motion for leave to file her amended answer, plaintiff argued that he would be prejudiced because he would have to change his trial strategy and he would need time for additional discovery. However, defendant's original answer was equivocal and, as stated above, was not a judicial admission because the answers cited by plaintiff were conclusions of law. Therefore, plaintiff's purported expectation that he would not need to prove the element of favorable termination at trial was not reasonable.  We also note that, although plaintiff had ample time to conduct further discovery before trial, he failed to do so.

¶ 71    Our " 'primary consideration' " in determining whether to allow amendment of pleadings is whether doing so would further the ends of justice. *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 200 (quoting *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 968 (1992)). In light of the liberal policy in Illinois of allowing parties to amend their pleadings (*Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 885 (1994)) and the trial court's consideration of plaintiff's arguments and its determination that defendant's amended answer would cure her inadvertence and plaintiff would not be prejudiced, we determine that the trial court did not abuse its discretion by allowing her to amend her answer.

¶ 72    Plaintiff also maintains that the trial court erred when it denied his motion to strike defendant's amended answer because defendant did not file it "*instanter*" and she did not show good cause for such failure pursuant to Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011).

¶ 73    Illinois Supreme Court Rule 183 provides: "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the *rules* to be done within a limited period, either before or after the expiration of the time." (Emphasis added). Ill. S. Ct. R. 183 (eff. Feb. 16, 2011). When interpreting

the Supreme Court Rules, we must ascertain and give effect to the supreme court's intent. In re *Marriage of Arjmand*, 2024 IL 129155, ¶ 20.

¶ 74 Rule 183's plain language indicates that it only applies to the time limits set forth by the Illinois supreme court rules. It simply does not apply to a trial court's order. Further, although defendant filed her amended answer ten days after being granted leave, the trial court found that her amended answer was timely filed, and she had attached her amended answer to her motion for leave to amend. Therefore, we determine that the trial court did not abuse its discretion in denying plaintiff's motion to strike defendant's answer.

¶ 75                    3. Barred Expert Witness

¶ 76 Plaintiff argues that the trial court abused its discretion in barring attorney Daniel Madigan from testifying as an expert witness. He notes that the trial court's October 20, 2020, order permitted the parties to amend their 213(f) disclosures within 30 days and he timely disclosed Madigan as an independent expert witness. Defendant asserts that the trial court properly barred expert testimony from Madigan on the basis that he had not been properly disclosed pursuant to Illinois Supreme Court Rule 213(f)(2). Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2018).

¶ 77 Supreme Court Rule 213(f)(2) states:

"*Independent Expert Witnesses*. An "independent expert witness" is a person giving expert testimony who is not the party, the party's current employee, or the party's retained expert. For each independent expert witness, the party must identify the subjects on which the witness will testify and the opinions the party expects to elicit. An answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." *Id.*

¶ 78     Thus, Rule 213(f)(2) requires the disclosure of the subjects on which the independent expert witness will testify and the opinions the party expects to elicit from that witness. *In re Davon H.*, 2015 IL App (1st) 150926, ¶ 86; Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007). "The Rule 213 disclosure requirements are mandatory and subject to strict compliance by the parties." *Tirado v. Slavin*, 2019 IL App (1st) 181705, ¶ 48. "[I]f an opinion is important to the theory of one's case, it is essential that it *** be disclosed." *Id.* ¶ 49.

¶ 79     "A trial court's ruling on the admission of evidence is an exercise of discretion and will not be reversed absent an abuse of that discretion." *Tirado*, 2019 IL App (1st) 181705, ¶ 49. An abuse of discretion occurs only when the trial court's ruling is arbitrary or fanciful or when no reasonable person would adopt the same view. *Brown v. Illinois State Police*, 2021 IL 126153, ¶ 49.

¶ 80     Rule 213 furthers the administration of justice by providing a degree of certainty in the trial process and eliminating a trial by ambush. *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 381 (2003). It permits litigants to rely on the disclosed opinions of opposing experts and construct their trial strategy accordingly. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). A party's Rule 213 disclosures must "drop down to specifics." *Id.* The supreme court rules represent the "best efforts to manage the complex and important process of discovery." *Id.* One of the purposes of Rule 213 is to avoid surprise. *Id.* Permitting either side to ignore Rule 213's plain language defeats its purpose and encourages tactical gamesmanship. *Id.* at 109-10.

¶ 81     On its face, plaintiff's disclosure regarding Madigan does not satisfy the requirements of Rule 213(f)(2). Plaintiff's disclosure of Madigan as an expert witness stated:

"This witness will testify as to his expertise in the field of law, particularly Illinois Civil and Criminal Practice, as it relates to the validity of the [defendant's] Forcible [sic] Entry

and Detainer Complaint leading up to [the] arrest and criminal and civil prosecution of [plaintiff] and the validity of the criminal and civil prosecution of [plaintiff] under the Illinois Domestic Violence Act."

¶ 82    Plaintiff failed to disclose the opinions he expected to elicit from Madigan. See Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2018). Thus, plaintiff failed to comply with the disclosure requirements for independent expert witnesses set forth in Rule 213(f)(2). See Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2018). We conclude that the trial court did not abuse its discretion by barring plaintiff from presenting Madigan's undisclosed expert witness testimony.

¶ 83                    4. Directed Verdict—Malicious Prosecution

¶ 84    Next, we consider whether the trial court erred when it entered a directed verdict in favor of defendant at the conclusion of plaintiff's case-in-chief. He maintains that the trial court erred when it determined that he failed to prove that the criminal and civil cases terminated in his favor.

¶ 85    A motion for directed verdict will not be granted unless all the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). On review, we construe all the evidence in the light most favorable to the nonmoving party. *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 353-54 (1992). The standard of review of an order disposing of a motion for directed verdict is *de novo*.

¶ 86    Plaintiff argues that when the evidence is viewed in his favor, the jury could have reasonably inferred or concluded that the proceedings terminated in his favor. Regarding the criminal case (count I), plaintiff notes that it terminated with the *nolle prosequi* of the battery charge against him, the State did not subpoena defendant to compel defendant to testify, and the State did not recharge him. Regarding the emergency order of protection case (count II), plaintiff

notes that the court dismissed for want of prosecution by defendant. However, this evidence, without more, is insufficient to prove that the proceedings terminated in plaintiff's favor.

¶ 87    Our Supreme Court stated that a "criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Beaman v. Freesmeyer*, 2021 IL 125616, ¶ 109 (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 513 (1996)). Indeed, the circumstances surrounding the *nolle prosequi* rather than the title or form of the disposition must be examined. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 279, 226 (1997). The question turns upon the circumstances under which the proceedings were withdrawn, which may of course be "for reasons not indicative of the innocence of the accused." *Swick*, 169 Ill. 2d at 513. Thus, only when a plaintiff establishes that the *nolle prosequi* of his criminal charges "compel an inference that there existed lack of reasonable grounds to pursue the criminal prosecution" does the plaintiff meet his burden of establishing that the criminal action was terminated in his favor for purposes of his malicious prosecution claim. *Id.* at 514. If, on the other hand, the underlying criminal proceedings were terminated in a manner not indicative of the plaintiff's innocence—such as the impracticability of bringing the accused to trial—then, he cannot prevail on a claim of malicious prosecution. *Id.* at 513. Only when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof." *Swick*, 169 Ill. 2d at 513 (citing Restatement (Second) of Torts § 672 (1977)). "Otherwise, every time criminal charges are *nol-prossed* a civil malicious prosecution action could result." *Id.*

¶ 88    Here, plaintiff presented evidence at trial that the State's motion to *nolle prosequi* the battery charge against him was granted and that the State did not refile the charge. However,

plaintiff failed to provide any evidence that the *nolle prosequi* was entered for reasons consistent with his innocence. See *id.* at 513. Rather, the evidence shows that the State moved for a continuance prior to the trial date because it knew that defendant, a material witness, would be out of town during trial. The State *nol-prossed* the case only when the court denied its motion. We also note that plaintiff fails to cite authority for his assertion that the State's failure to refile the battery charge is consistent with his innocence. Plaintiff provided neither evidence nor authority that the criminal case terminated in his favor. Therefore, the trial court properly directed a verdict in defendant's favor regarding count I.

¶ 89    Similarly, plaintiff provided no evidence that the emergency order of protection proceeding terminated in his favor. The evidence at trial established that although the court ultimately dismissed the order of protection when it came up for an extension, the court granted defendant's petition for an emergency order of protection. The court denied the extension or plenary order for want of prosecution because defendant failed to appear. Again, plaintiff presented no evidence that the dismissal was consistent with his innocence. Therefore, the trial court properly directed a verdict in defendant's favor as to count II.

¶ 90    Plaintiff argues that to prove favorable termination he needed to show only that his cases ended without convictions. He cites *Thompson v. Clark*, 142 S. Ct. 1332 (2022). *Thompson*, however, is distinguishable. *Thompson* sets a less rigorous standard for malicious prosecution claims than does Illinois law. *Thompson* deals with "a Fourth Amendment claim under [42 U.S.C.] § 1983 for malicious prosecution." *Id.* at 1336. *Thompson* did not deal with state law claims for malicious prosecution. Therefore, *Thompson* is inapposite.

¶ 91    Finally, plaintiff argues that the trial court erred when it denied his motion *in limine* to bar defendant from presenting evidence or testimony that would either negate or refute that the

criminal and civil actions terminated in his favor. Because we have determined that defendant did not judicially admit that the actions terminated in plaintiff's favor, the trial court properly denied plaintiff's motion and allowed her to file an amended answer. Moreover, defendant was not required to negate or refute anything at trial because plaintiff failed to present any evidence that proved favorable termination. Therefore, even if the motion *in limine* had been granted it would not affect plaintiff's failure to sustain his burden of proof as to favorable termination.

¶ 92                                  III. CONCLUSION

¶ 93    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 94    Affirmed.